Argued and submitted March 12,
affirmed April 28, reconsideration denied June 5,
petition for review denied July 2, 1980 (289 Or 337)

# In the Matter of the Compensation of
## MILLION,
### *Petitioner,*
#### *v.*
# STATE ACCIDENT INSURANCE FUND,
### *Respondent.*
## (No. 78-4472, CA    16028)

610 P2d 285

Allan H. Coons, Eugene, argued the cause for petitioner. With him on the brief was Coons & Anderson, P. C., Portland.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

**GILLETTE, P. J.**

Claimant appeals from an order of the Workers' Compensation Board upholding SAIF's denial of compensation for an operation performed to relieve rotator cuff tendonitis on her right shoulder. The Board reversed a referee's decision ordering payment of the claim. We affirm.

Petitioner's claim is one of occupational disease. She claims that her job, which involved repetitive and rapid movement of the hands and arms, was a contributing cause of her shoulder difficulties. The Board found that this present claim was barred by principles of res judicata in that the issue of the cause of her tendonitis had been considered in a previous claim, wherein claimant sought compensation for the shoulder operation on the basis of a 1972 industrial accident at the same job. The Board further found that the medical evidence failed to support a finding of causal relationship between claimant's job activities and her right shoulder problems in any event. We affirm.

In order to determine if res judicata applies to this case, it is necessary to examine the history of claimant's disability.

On August 24, 1972, claimant, then a "tailer" at a mill, was injured at work when struck on the hand by a piece of wood. The injury was accepted by SAIF as compensable. Shortly thereafter, claimant received treatments from a chiropractor, Dr. Campbell, to relieve the pain. In May, 1973, claimant returned to see Dr. Campbell, complaining of severe pain in her right shoulder joint. Campbell felt that it was difficult to determine if the pain was related to the 1972 accident because of the lapse of time. The doctor noted that claimant has been told by her employer to use the August, 1972, accident date in seeking treatment for her shoulder difficulties.

In October, 1973, claimant underwent corrective surgery for carpal tunnel syndrome of the right wrist,

performed by Dr. Potter. Initially, SAIF denied responsibility for this surgery but later found it to be related to the 1972 injury and compensable. In investigating the matter, claimant's then attorney wrote to Dr. Potter, attempting to determine the cause of her wrist problems. His letter focused not only on the relationship between the 1972 injury and her present difficulty, but discussed as well the effect her job activities could be having on her wrist. The letter specifically noted the pain in her arm and shoulder increased when her work activities were more strenuous.

In May, 1974, claimant went to see a Dr. Matthews. He noted that her chief complaint was pain in her right hand. She was referred to a Dr. Tennyson, who performed thoracic outlet surgery on claimant's right shoulder for right brachial plexus. A repeat of the carpal tunnel surgery was also done. SAIF eventually paid for both procedures, after initially denying the claim for the shoulder surgery.

In February, 1975, claimant was referred to another doctor, Dr. Parrish, because of continuing difficulty with pain and movement of her right hand. He noted, without specifying them, that a number of factors were at play which contributed to her continued disability. He released her from treatment in August, 1976. In December, 1976, SAIF awarded her permanent partial compensation equal to 45 degrees for 30 percent loss of her right forearm. This was in addition to a 1974 award of compensation equal to 15 degrees for 10 percent loss of her right forearm. Her award was later increased by the referee to equal 90 degrees for loss of 60 percent use of her forearm.

Meanwhile, claimant, in May, 1975, had returned to Dr. Matthews because of persistent right shoulder pain. He diagnosed her problem, which he had first noted in December, 1974, as rotator cuff tendonitis. He noted that the exact origin of the tendonitis was uncertain and that, while claimant believed the pain

originated after the 1972 injury, it had not become a major problem until recently. The rotator cuff surgery which is the subject of the present claim was performed in August, 1975. After performing the 1975 operation, Matthews indicated that, as there was no definite way to eliminate the possibility that the shoulder joint difficulties were related to the 1972 injury, he felt that the condition should be considered part of that injury. He later indicated that the shoulder difficulties were less related to the original injury than were certain of claimant's other medical problems but that it was difficult to be sure that the matters were entirely unrelated.

Claimant first sought compensation for the 1975 shoulder surgery on the theory that it was caused by the 1972 inuury. SAIF denied responsibility. This decision was affirmed by the referee after a finding that there was a lack of sufficient expert evidence of medical causation to link claimant's shoulder condition to her 1972 industrial accident. The denial was further affirmed by both the Workers' Compensation Board and this Court. *Million v. SAIF,* 35 Or App 269, 581 P2d 136 (1978).

In 1978, claimant, acting on advice from a new attorney, again sought compensation for the 1975 shoulder operation performed by Dr. Matthews. This time, she asserted that the problem had developed as a result of her job; that it had been caused by "two years of repetitive, consistent shoulder and arm motion at waist and above associated with sorting pieces of wood and carrying stacks of wood from table to pallet." SAIF denied the claim on the basis that the matter had already been determined and that there was insufficient evidence of causation. The referee disagreed and ordered payment of the claim, after concluding that this precise issue was not adjudicated by the previous denial of compensation. On appeal by the Fund, the Board reversed the referee's decision, finding that the issue had been fully disposed of by the previous action.

While operating under the assumption that the doctrine they were applying was res judicata, both the Board and the referee actually framed their decisions in collateral estoppel terms. Collateral estoppel applies "only to material issues or determinative facts which were actually or necessarily adjudicated in the prior action." *Jones v. Flannigan,* 270 or 121, 124, 526 P2d 543 (1974). Res judicata, on the other hand, applies not only to every claim included in the pleadings but also to every claim which could have been alleged under the same "aggregate of operative facts which compose a single occasion for judicial relief." *Taylor v. Baker,* 279 Or 139, 144, 566 P2d 884 (1977); *Dean v. Exotic Veneers Inc.,* 271 Or 188, 194, 531 P2d 266 (1975).

Whether claimant's shoulder condition was caused by her job activities was not decided by the previous action seeking compensation for that condition. The sole issue in the previous case was whether or not her shoulder operation was necessitated by her 1972 industrial injury. Thus, collateral estoppel is not a bar to the present claim. However, res judicata is applicable.

It is clear that claimant, in the previous claim, could have asserted both grounds of causation as a basis for compensability. The claims are related and both arise from the same set of facts. Evidence from Dr. Matthews' indicates that, in all probability, both the work and the accident were material contributing factors to her condition.

Claimant first began to experience shoulder pain shortly after her industrial accident and appears that the pain has been more or less continuous since that time. The claimant, whom the referee found to be a credible witness, testified that she had assumed all along that her shoulder pain was related to her hand injury. She testified, and Dr. Campbell's notes agree, that her employer, when she first complained of discomfort in her shoulder, told her to seek treatment

[1102]

as if it were part of the original claim. The various doctors treated her hand and arm condition as one and, in 1975, Dr. Matthews considered it the same claim.

However, claimant also testified that Dr. Tennyson told her that her condition resulted from her job, specifically her lifting activities, as well as her hand injury. In addition, it was apparent that claimant's first attorney suspected that her arm and shoulder pain might be caused, in part, by her work activities. Clearly, Dr. Potter thought so, at least with respect to her wrist problems and, as a whole, all the doctors' notes indicate that they believed a number of factors caused her arm and shoulder difficulties.

We think the evidence shows that claimant and her attorney were, at the time of the filing of her aggravation claim in 1975, aware that it was also possible that her shoulder condition was, in whole or in part, the product of an occupational disease. Under the circumstances, a claim on this theory should have been made in 1975. *See Gittlesohn v. City of Cannon Beach,* 44 Or App 247, 605 P2d 743 (1980).

Affirmed.