Argued and submitted September 29, 1989, the decision of the Court of Appeals affirmed and the order of the Workers' Compensation Board remanded to the board for further proceedings July 11, 1990

In the Matter of the Compensation of
Walter F. Drews II, Claimant.

Walter F. DREWS II,
*Respondent on Review,*

*v.*

EBI COMPANIES
and Unity Construction,
*Petitioners on Review.*

(WCB 85-12763; CA A43657; SC S36174)

795 P2d 531

Craig A. Staples, Portland, argued the cause and filed the petition for petitioners on review.

James L. Edmunson, Eugene, argued the cause for respondent on review.

Before Peterson, Chief Justice, and Linde, Carson, Jones, Gillette, Van Hoomissen and Fadeley, Justices.**

FADELEY, J.

---

** Linde, J., retired January 31, 1990; Jones, J., resigned April 30, 1990.

## FADELEY, J.

The issue is whether either issue or claim preclusion applies in this case. An injured worker seeks correction of the amount of temporary total disability benefits (TTD) payable for periods when he was unable to work as a result of an injury. He also seeks a penalty and attorney fees because EBI Companies (EBI), the employer's insurer, did not correct the amount of TTD payments within a reasonable time after EBI was notified of an error in the calculation of the amount of TTD due the worker. EBI asserts that claim preclusion prevents any recovery on account of the incorrect amount of TTD and, perforce, no penalty or attorney fees. We affirm, for different reasons, the Court of Appeals decision which reversed and remanded an Order of the Workers' Compensation Board.

In 1980, a ladder fell on the worker's neck, causing injury, surgery, and time loss in 1981. The employer's report of injury listed $8.50 per hour when $10.50 was the correct hourly wage rate for the injured worker, as the employer later acknowledged. EBI calculated and paid TTD based on the lower rate. A determination order issued in 1981 ordering TTD for a specified time period, "less time worked." No appeal was taken. The worker returned to work.

In 1984, the worker claimed aggravation and need for further surgery. EBI denied the claim but, following a June 13 hearing, on July 24, 1984, a referee allowed it to permit surgery.

When the aggravation claim was allowed to permit further surgery, the referee expressly found that the shoulder condition requiring surgery was related to the industrial accident and that the condition had worsened since the 1981 closure order. The referee in 1984 also ordered future TTD payments as follows:

> "ORDERED that EBI Companies, in connection with the aggravation claim remanded to it by the Referee, shall pay claimant temporary total disability benefits [for unspecified future periods] as authorized by [doctor], claimant's treating physician."

Temporary total disability benefits eventually were paid in 1984-85 under that order, but at an erroneously low rate. It is

not contended that the worker knew of the error in 1984 but, in any event, he failed to raise the erroneously listed TTD rate at the 1984 hearing which allowed or opened the aggravation claim.

An evaluation of the aggravation claim produced a determination order of October 7, 1985, which allowed temporary total disability for the period starting with the time of surgery and ending June 28, 1985. On October 17, 1985, the worker filed a timely request for hearing, seeking increased permanent partial disability and payment of TTD beyond June 28, 1985. The wage-rate error was discovered by the worker's vocational counselor in the fall of 1985. The injured worker's attorney advised EBI, in writing, of that error and demanded that the correct wage rate be used to recompute the amount of weekly TTD resulting from surgeries in 1984-85. EBI denied that the rate of TTD was incorrect and refused to pay additional amounts of TTD to correct the underpayments for any period. The attorney then added to the hearing request in the aggravation claim proceeding a request for correction of the TTD rate for 1984-85 and for penalty and attorney fees.

A hearing was held in March of 1986 to review requests concerning the 1985 determination order and the TTD requests. The referee found both that the TTD rate was in error for the 1984-85 period and that EBI should be ordered to pay additional TTD for a number of weeks beyond the ending date provided in the determination order. The referee also found that the insurer had unreasonably delayed correction of the rate.[1] The referee ordered EBI to pay an attorney fee and penalty of 25 percent of the TTD compensation that the worker had not received in regard to the aggravation claim due to the wage-rate error.

However, on reconsideration requested by EBI following an unrecorded telephone conference argument, the referee concluded and ordered as follows:

"I would have to agree with [insurer's attorney] that the incorrect wage rate was an issue that could have been raised in the prior [June 13, 1984,] hearing and, since it was not, it was

[1] ORS 656.262(4) provides that compensation "shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim."

then waived. Consequently, the opinion and Order will be amended as follows:

"IT IS HEREBY ORDERED that the Opinion and Order dated April 21, 1986, shall be amended to remove the penalty and attorney fee awarded because the insurer had paid the claimant time loss at an incorrect rate.

"IT IS FURTHER ORDERED that the remainder of the Opinion and Order is republished and remain in full force and effect."

In March 1987, the Workers' Compensation Board, without opinion, affirmed the referee's order.

The Court of Appeals reversed and remanded to the Board because a wage rate dispute presents an issue of fact, not a separate "claim" for preclusion purposes. *Drews v. EBI Companies,* 96 Or App 1, 771 P2d 285 (1989). We affirm the Court of Appeals' reversal of the Board's order because the finality required for preclusion has not yet attached to the aggravation claim.

It is by no means clear from the record that claim or issue preclusion rules are the reason why the referee or the Board denied claimant's request for the penalty and attorney fees. The referee held only that "the incorrect wage rate was an issue which could have been raised in the prior hearing and, since it was not, it was then waived." The Board merely affirmed the referee's order. However, both parties argued to the Board and the Court of Appeals whether the wage-rate error was covered by claim preclusion rules. *Drews v. EBI Companies, supra,* 96 Or App at 3-4.

The Court of Appeals stated the issue before it in preclusion terms and held that the case involved issue preclusion, but explained its decision by stating that a question of correct wage rate "is an issue of fact, not a claim." Whether preclusion by former adjudication applies to the issue of incorrect TTD rate is properly before this court for decision.

## DISCUSSION OF CLAIM
## AND ISSUE PRECLUSION

Because decisions use the term *"res judicata"* inconsistently, it is important to clarify the terminology used here. "Preclusion by former adjudication" is a doctrine of rules and principles governing the binding effect on a subsequent proceeding of a final judgment previously entered in a claim. The term comprises two doctrines: claim preclusion,[2] also known as *res judicata,* and issue preclusion,[3] also known as collateral estoppel. Some authors use the term *res judicata* to refer to both subdivisions of former adjudication doctrine. *See* 1 Restatement (Second) of Judgments 131 (1982) (Introductory Note beginning chapter 3, Former Adjudication: The Effects of a Judicial Judgment).

However, in this opinion and henceforth, we will use the more exact terms "claim preclusion" or "issue preclusion" to denote the respective branches of preclusion by former adjudication. This is merely a choice of nomenclature, not a law change.

### A. *Issue Preclusion*

The issue preclusion branch of preclusion by former adjudication, formerly called collateral estoppel, precludes future litigation on a subject issue only if the issue was "actually litigated and determined" in a setting where "its determination was essential to" the final decision reached.[4] *North Clackamas School Dist. v. White,* 305 Or 48, 53, 750 P2d 485, *modified* 305 Or 468, 752 P2d 1210 (1988); Restatement (Second) of Judgments § 17(3) (1982); *see also id.* at § 27. This court has previously explained issue preclusion as follows:

"If a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination ·

---

[2] *See, e.g., Taylor v. Baker,* 279 Or 139, 144, 566 P2d 884 (1977); *Dean v. Exotic Veneers, Inc.,* 271 Or 188, 194, 531 P2d 266 (1975).

[3] *See, e.g., North Clackamas School Dist. v. White,* 305 Or 48, 50, 750 P2d 485, *modified,* 305 Or 468, 752 P2d 1210 (1988); *Jones v. Flannigan,* 270 Or 121, 124, 526 P2d 543 (1974); *Gaul v. Tourtellotte,* 260 Or 14, 17, 488 P2d 416 (1971).

[4] The decision in *Chavez v. Boise Cascade,* 307 Or 632, 637, 772 P2d 409 (1989), turns on whether an issue was essential to a final decision.

was essential to the judgment." *North Clackamas School Dist. v. White, supra,* 305 Or at 53.

Issue preclusion applies to an issue of either fact or law. Restatement (Second) of Judgments § 27 ("[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive"). *Compare Heller v. Ebb Auto Co.,* 308 Or 1, 6, 774 P2d 1082 (1989) ("[w]ithout any reason to think that the referee was aware of that legal issue, no decision on that issue can be implied from the denial of compensation") *with* § 27.

The preclusive effect of the rule is subject to exceptions, of which those listed in section 28 of Restatement (Second) of Judgments are illustrative.

### B. Claim Preclusion

The claim preclusion branch of preclusion by former adjudication may be stated:

> "[A] plaintiff who has prosecuted one action against a defendant through to a final judgment * * * is barred [*i.e.,* precluded] * * * from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action." *Rennie v. Freeway Transport,* 294 Or 319, 323, 656 P2d 919 (1982).

Claim preclusion applies equally to a defendant's defense. *See* Restatement (Second) of Judgments § 18. Claim preclusion does not require actual litigation of an issue of fact or law, as does issue preclusion. Nor does it require that the determination of the issue be essential to the final or end result reached in the action, claim or proceeding. However, claim preclusion requires that specified characteristics be present in the former action or proceeding before the determination is conclusive on the parties in the future. The opportunity to litigate is required, whether or not it is used. Finality is also required. *See id.* at § 18, comment a, and § 19, comment a. Where there is an opportunity to litigate the question along the road to the final determination of the action or proceeding, neither party may later litigate the subject or question.

■ The policies upon which court-made claim preclusion law is based include (1) achieving finality to a conclusion of a dispute, and (2) preventing splitting of that dispute into separate controversies. Both policies protect limited dispute-resolution resources from repeated expenditure upon the same overall dispute. Thus, "[a] valid and final personal judgment is conclusive between the parties, except on appeal or other direct review." See Restatement (Second) of Judgments §§ 17, 18, 19 and 27 (1982).

■ To prevent splitting of the dispute or controversy, courts employ a broad definition of what could have been litigated. Claim preclusion conclusiveness between the parties applies "with respect to all or any part of the transaction, or series of connected transactions," out of which the action or proceeding arose. *Id.* at § 24(1); *see Rennie v. Freeway Transport, supra,* 294 Or at 324.[5]

■ Claim and issue preclusion rules are subject to a number of exceptions. One is relevant here. A final determination is not conclusive when, by provision of a statute or valid rule of the body making the final determination, that determination does not bar another action or proceeding on the same transactional claim. Restatement (Second) of Judgments § 20(1)(c) (1982).[6]

■■ Rules fostering the policy against splitting the dispute also recognize exceptions. Where the decision maker expressly reserves for a party the right to maintain a second action or proceeding at the time the first determination is made, there is no preclusive effect. *Id.* at § 26(1)(b). Where a statutory scheme contemplates that the contentions arising from a transaction or series of connected transactions may be split, splitting as contemplated by the statutory scheme is not

---

[5] An earlier formulation of the definition of what could have been litigated was stated in *Dean v. Exotic Veneers, Inc., supra* note 2, at 193-94, as every claim which could have been alleged under the same aggregate of operative facts giving rise to judicial relief. The two descriptions of what is a claim are not far apart because any transaction is proved as an aggregate of facts showing it and its nature. Section 24(2) of Restatement (Second) of Judgments states some criteria for limiting factual groupings as separate transactions.

[6] Further, Restatement section 20(1)(c) provides that a judgment for a defendant does not bar a plaintiff's claim "[w]hen by statute * * * the judgment does not operate as a bar to another action on the same claim."

merged in or barred by a former adjudication concerning the overall transaction. *See id.* at § 26(1)(d).

## CLAIM AND ISSUE PRECLUSION
## APPLY TO ADMINISTRATIVE PROCEEDINGS

■ Both issue preclusion and claim preclusion apply to administrative proceedings, provided that the tribunal's decision-making processes include certain requisite characteristics.[7] Both branches of preclusion by adjudication apply to workers' compensation proceedings. *North Clackamas School Dist. v. White, supra,* 305 Or at 52 (issue preclusion rules apply where they "facilitate prompt, orderly and fair problem resolution"); *Million v. SAIF,* 45 Or App 1097, 610 P2d 285 (1980) (hereafter cited as *Million II*) (claim preclusion applied, splitting of claim prevented). *See also Kepford v. Weyerhaeuser Co.,* 77 Or App 363, 713 P2d 625 (1986) (claim preclusion rules against splitting a claim do not apply where basis for later claim did not yet exist at time of earlier decision).

■ Section 83(1) of Restatement (Second) of Judgments provides, with exceptions, that final administrative adjudication "has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." Comment f to section 83 states:

> "*Claim and issue preclusion: general rules.* The rules of res judicata referred to in Subsection (1) include the rules of claim preclusion stated in §§ 17-24 and the qualifications and exceptions thereto stated in §§ 20-26, and the rules of issue preclusion and the qualifications and exceptions thereto stated in §§ 27-28. * * *" *Id.* § 83, *comment f* at 274.

The policies undergirding court-made rules of claim preclusion — protecting finality and preventing splitting — apply to administrative claim or issue preclusion questions.

### A. Finality

The point at which finality attaches to a statutory administrative proceeding for preclusion purposes will usually

---

[7] *Compare State v. Ratliff,* 304 Or 254, 258, 744 P2d 247 (1987), *with Bandy v. Norris, Beggs & Simpson,* 222 Or 1, 23-24, 342 P2d 839, 351 P2d 445 (1959); *see generally* 4 Davis, Administrative Law Treatise 49-51, § 21.2 (1983) ("*Res Judicata* Applies to Administrative Adjudication").

be governed by statutory provisions. Indeed, a statutory scheme of remedies may expressly contemplate that successive proceedings may be brought, notwithstanding the finality of the first proceeding. But the statutory scheme will usually spell out the situations where a second proceeding is not precluded by finality of a first proceeding.[8] *See North Clackamas School Dist. v. White, supra,* 305 Or at 57-58. The statutes applicable to this case are discussed in the analysis section of this opinion.

## B. Splitting

A worker who is aware that it is possible that her physical condition is the product of either an occupational disease or a job-related traumatic injury may not bring two successive compensation claims seeking the same relief for the same condition. The failure to assert both theories or contentions for recovery in the first compensation claim precludes the second claim on the second theory, where finality has attached to the proceeding on the first claim and where there was an opportunity to litigate both claims at the time of the first claim. *Million II, supra* 45 Or App at 1103. *Compare*

---

[8] The requirement of finality, before preclusion applies, is expressly stated in Restatement (Second) of Judgments § 83 (1982), in part, as follows:

"(2) An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:

"* * * * *

"(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered * * *."

But where the statutory scheme of remedies contemplates assertion of a second claim, finality of the first is not preclusive of the second. Section 83 continues:

"(3) An adjudicative determination of a claim by an administrative tribunal does not preclude relitigation in another tribunal of the same or a related claim based on the same transaction if the scheme of remedies permits assertion of the second claim notwithstanding the adjudication of the first claim."

Among the exceptions to the general rule specifically cross-referenced by comment f to section 83(1) is section 26 of Restatement (Second) of Judgments, which in part provides:

"(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

"* * * * *

"(d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory * * * scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim."

*Million v. SAIF,* 35 Or App 269, 581 P2d 136 (1978) (hereafter *Million I*), *with Million II, supra.*

In *Million I,* the Court of Appeals affirmed a denial of compensation on the ground that the worker's shoulder condition was not caused by an on-the-job traumatic injury. The facts in the *Million* cases are as follows. Claimant suffered a compensable injury to her hand in 1972 when she was struck there by a piece of wood. The claimant first complained of pain in her shoulder in 1973. In 1975, the claimant sought compensation for a shoulder operation as an aggravation of the 1972 injury but was rebuffed by the Board and on appeal for lack of evidence that the shoulder condition was due to the trauma of the 1972 industrial injury. *Million I, supra.* The claimant later sought compensation for the shoulder operation on the previously unstated and unlitigated theory that the condition was caused by occupational disease. In *Million II,* the Court of Appeals concluded that *res judicata* barred a second claim for workers' compensation for the shoulder condition based on an occupational disease theory, 45 Or App at 1102-03. The Court of Appeals concluded:

> "We think the evidence shows that claimant and her attorney were, at the time of filing of her aggravation claim in 1975, aware that it was also possible that her shoulder condition was, in whole or part, the product of an occupational disease. Under the circumstances, a claim on this theory should have been made in 1975." 45 Or App at 1103.

The first *Million* decision determined only that a shoulder condition did not result from the traumatic injury to the worker's hand. That was the question litigated, decided, essential to the decision, and embodied in an order final after appeal, thereby precluding that *issue* from being relitigated. But, because there was also an opportunity, before the first decision became final, to litigate whether the shoulder injury or condition was due to some other aspect of the worker's job, the first final decision that the shoulder injury was not work related (*Million I*) precluded further litigation on any other job-causation theory, *Million II.* That conclusion — that the shoulder condition was not job related — could not be relitigated because of *claim* preclusion rules.

Conversely, in *North Clackamas School Dist. v. White, supra,* the first litigation and decision established that

the hip-girdle injury occurred when a worker slipped on some steps at work. The first decision also established that the injury did not produce a loss of earnings at the time of the first final decision because the worker remained able to work, although the need for medical treatment continued and pain arising from the time of injury persisted.

Thereafter the worker pressed an aggravation claim. The referee and the Board found that there was no worsening because the injury did not deprive the worker of earnings but also found that medical treatment should be continued because needed treatment was for the work injury. This is the second decision referred to herein.

The Court of Appeals reversed, invoking *res judicata,* holding that the compensability of claimant's hip condition had already been determined, *i.e.,* it was not compensable.[9] This court reversed and reinstated the entitlement to medical treatment for the hip-girdle condition, as ordered by the Board. The first decision established that slipping on the steps produced a hip-girdle injury. The second decision was in agreement on that issue. *North Clackamas School Dist. v. White, supra,* 305 Or at 57. Both decisions established that there was a continuing need for medical care which was job related. No preclusion attached to the worker's request for continuing medical care for the job injury.

## ANALYSIS

The threshold issue tendered by EBI is whether the statutory entitlement to TTD, in the correct amount, involves a separate claim distinct from the claim for enforcement of various future rights to which the worker became entitled by reason of the initial allowance of the aggravation claim in 1984.[10] Those future rights included TTD whenever, as the referee ordered, the treating doctor authorized them. In its issue preclusion analysis, the Court of Appeals stated:

"We do not agree that the issue that claimant now seeks to litigate is a claim as that term is used in *res judicata* parlance.

---

[9] *See North Clackamas School Dist. v. White,* 85 Or App 560, 737 P2d 649 (1987).

[10] It bears repeating that this order opened an aggravation claim, it did not finally determine any issue nor close any claim.

EBI had been paying temporary total disability and, consequently, there was no need to raise an issue of entitlement to it. The narrow issue involved is the amount of temporary total disability. More particularly, the question is what was the correct wage rate; that is an issue of fact, not a claim." 96 Or App at 4.

We agree with the first sentence of the Court of Appeals' analysis — that the TTD was not by itself the claim for preclusion by former adjudication purposes. However, stating that a subject in controversy is an issue of fact, not a claim, fails to properly explain why issue or claim preclusion does not apply.

EBI contends that the worker is impermissibly splitting his claim for compensation for a single injury. In support of that argument, EBI first urges that "claim" should be defined for preclusion purposes the same way it is defined in the workers' compensation statutes. Under ORS 656.005(6), " '[c]laim' means a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge." The definition of the term "claim" provided in ORS 656.005(6) governs the construction of ORS chapter 656, unless the context requires otherwise. ORS 656.003.

A statutory definition of "claim" is for use in interpreting the statutory scheme to which the definition expressly relates. *Chapman Bros. v. Miles-Hyatt Investments,* 282 Or 643, 646, 580 P2d 540 (1978). It does not govern claim or issue preclusion rules made by judges, *State ex rel Huntington v. Sulmonetti,* 276 Or 967, 970-71, 557 P2d 641 (1976), unless the legislature manifests its intent that the definition do so. Such an intent is not present here.

The meaning of "claim" for purposes of claim preclusion was considered in *Troutman v. Erlandson,* 287 Or 187, 598 P2d 1211 (1979). This court stated:

"For res judicata purposes a 'claim' * * * does not mean the particular form or proceeding by which a certain kind of relief is sought but, rather, a group of facts which entitled plaintiff to relief." 287 Or at 201.

This court quoted at length "a fresh approach to determining what is a 'claim' * * * [in] the American Law Institute's Draft No. 5 of March 10, 1978, Restatement (Second) of the Law of

Judgments, § 61." *Id.* at 205. The court endorsed an expanded definition of claim to include all rights or remedies between the parties with respect to all or any part of a transaction, or series of connected transactions, out of which the action arose. Thereafter, this court has continued use of the transactional definition of claim. *See Rennie v. Freeway Transport, supra,* 294 Or at 327; *see also supra* note 5.

EBI relies upon *Dean v. Exotic Veneers, Inc.,* 271 Or 188, 531 P2d 266 (1975), to buttress its argument that the worker is splitting the claim. That case holds that, where a previous claim for money due on an express contract to pay for services is denied by the circuit court and the denial is final, a second claim in a separate action based on *quantum meruit* for the reasonable value of the same services is precluded. 271 Or at 200.

The claim for value of the same services could not be split by founding the single contention concerning payment for the services involved on one theory in one action and on a different legal theory in a second action. *Cf. Million II, supra,* 45 Or App at 1102 (first decision, that shoulder condition was not related to traumatic injury to worker's hand, final on appeal before filing of second claim that same shoulder condition resulted from occupational disease); *Kepford v. Weyerhaeuser Co., supra* (finding entered in 1979 that preexisting disc disease was not permanently worsened by a 1974 back injury did not preclude a 1983 finding that work as a logger after 1979, together with the back injury, were the major causes of an occupational disease aggravating the preexisting disc condition and necessitating post-1979 surgery).

In *Kepford,* the Court of Appeals explained that:

"There is no evidence, however, that in 1979 claimant's back condition had reached the point that it necessitated additional treatment. The evidence presented at the 1983 hearing, including the post-surgical findings regarding the cause of the worsened condition, constituted a new set of facts that could not have been litigated in 1979." 77 Or App at 366.

A. *The Statutory Scheme.*

The legislature enacted workers' compensation changes in 1990. We generally refer, in our following discussion, to the statutes as they were before that change.

■ ■ The workers' compensation statutes, in effect at the time of referee and Board orders, assist in determining what are separate claims to which claim preclusion applies. Those statutes described when more than one proceeding could be instituted to recover for a single injury at work. The statutes also implicitly provided when the finality requisite for claim or issue preclusion attached to a given decision on various issues.

ORS 656.273 provided in part:

> "After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, for worsened conditions resulting from the original injury.
>
> "* * * * *
>
> "(3) A physician's report indicating a need for further medical services or additional compensation is a claim for aggravation."

ORS 656.268(2)(a) provided in part:

> "[W]hen the injured worker's condition resulting from a disabling injury has become medically stationary * * * the insurer * * * shall * * * request the claim be examined and further compensation, if any, be determined."

Amounts of compensation are subject to adjustment until final closure. ORS 656.268(10) stated:

> "Any determination or notice of closure made under subsection (3), (4) or (5) of this section may include necessary adjustments in compensation paid or payable prior to the determination or notice of closure * * *."

Medical benefits, including treatment temporarily incapacitating a worker from working, may continue even after claim closure, provided that the medical need was connected to a job-related injury. ORS 656.245(1) in part provided:

> "For every compensable injury, the insurer or self-insured employer shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires. * * * The duty to provide such medical services [except for palliative care in certain circumstances] continues for the life of the worker."[11]

---

[11] The material in brackets reflects amendments adopted at the 1990 special legislative session. Or Laws 1990 (Special Session), ch 2 [SB 1197 A-Engrossed], § 10.

ORS 656.283(1) in part provided: "Subject to * * * ORS 656.319, any party or the director may at any time request a hearing on any question concerning a claim." ORS 656.283(1). An aggravation claim, for preclusion purposes and by statute, is a separate claim which is not precluded by the fact that an original claim for the work-related injury has been finally determined.

■ A claim determination is not final until hearing and judicial review rights are barred or exhausted. The statutory scheme indicates that the finality requisite for claim or issue preclusion, against the worker, occurs only when a worker fails to timely request a hearing after a claim denial, a determination order, or a notice of claim closure, ORS 656.319, or by failure to file a timely appeal to the Board, ORS 656.289(3), or the courts. ORS 656.295(8).[12]

### B. Applying the Statutory Scheme to This Case

■ The 1984 hearing order allowed and opened an aggravation claim, reversing a denial by EBI. The claim was opened to provide additional medical treatment and to consider permanent disability following that treatment. The order expressly provided that future TTD be paid "as authorized by * * * claimant's treating physician." When the aggravation claim was allowed, the statutory right to TTD compensation arose, applicable to any future period during which the worker was disabled by the 1984 surgery related to the work injury. ORS 656.210(1). This court is not authorized to modify that statute by reading it to not apply to an aggravation or worsening claim. The 1984 aggravation claim is presently before this court, following a determination order on October 7, 1985, a timely request for hearing, the 1986 referee's hearing and order, and the subsequent, statutorily provided, reviews by the Board, the Court of Appeals, and this court. The 1984 order and the 1986 order are but separate parts of the same aggravation claim, *i.e.,* the orders were entered in the same administrative proceeding now before us on judicial review. The finality required to invoke claim preclusion has not yet attached to the compensation proceeding of which the 1984 hearing was a part.

---

[12] Oregon Laws 1990 (Special Session), chapter 2, [SB 1197 A-Engrossed] section 9, may describe another category of final and unreviewable orders — where the Board approves lump-sum settlements.

Like *Kepford v. Weyerhaeuser Co., supra,* the TTD entitlement in controversy here is for periods and amounts arising after the original claim was determined and after the 1984 hearing was concluded. Like *North Clackamas School Dist. v. White, supra,* the first hearing on the aggravation claim in 1984 established that the work injury produced the need for treatment. Treatment thereafter caused the time loss which triggered TTD entitlement. Only when the doctor later authorized TTD periods did the statutory entitlement to TTD take effect. And, at that point, the right to TTD arose anew as part of the aggravation claim, which is still open and now before this court.

 The question of the proper rate of TTD payment is but one of many issues involved in that ongoing claim for aggravation. No finality has yet been accorded the aggravation claim opened in 1984, and no splitting of that claim occurred. We conclude that neither issue nor claim preclusion applies to the TTD rate issue.[13]

 But could the Board have properly affirmed on the referee's theory that the contention was "waived"? No, the conditions required to bar a contention by waiver are not met in this case. First, ORS 656.262(9), in effect at that time, provided:

> "[N]or shall mere acceptance of such compensation be considered a waiver of the right to question the amount thereof."

Second, our cases hold that waiver is "the intentional relinquishment of a known right." *Brown v. Portland School Dist. #1,* 291 Or 77, 84, 628 P2d 1183 (1981); *see also Waterway Terminals v. P.S. Lord,* 242 Or 1, 26-27, 406 P2d 556 (1965) (quoting a description of the rule of waiver in *McMillan v.*

---

[13] However, the original claim was closed and final in 1981. Correction of TTD amounts paid before that closure is barred by claim preclusion even though the subject was not litigated. The administrative proceeding related to the original 1981 claim for compensation is final in all respects which are not inconsistent with the statutory scheme authorizing additional claims when and if the effects of an injury worsen in the future.

Neither the 1981 nor the 1984 order stated what rate should be paid. Both orders simply required that TTD benefits be paid. The insurer, based upon information previously furnished by the employer, paid TTD benefits at an erroneously low rate. There was no finding in either order concerning the rate of payment to be made. Therefore, neither order provides a basis for any conclusion that the claim for higher TTD benefits was barred because of issue preclusion.

*Montgomery,* 121 Or 28, 32, 253 P 879 (1927)). The record before us provides no basis for concluding that claimant intentionally relinquished — *i.e.,* waived — his right to seek the correct amount of temporary total disability by his silence on the subject in 1984. Payments would accrue, if ever, after the time of the hearing. In 1981 and 1984, the worker did not know of the mistake and, thus, could not have intentionally waived the right to correct it. The referee erred when she found that the right to seek a correction was waived. The Board erred when it affirmed the referee.

The decision of the Court of Appeals is affirmed, and the order of the Workers' Compensation Board is remanded to the Board for further proceedings consistent with this opinion.