Argued and submitted September 30, 1997, affirmed February 18, petition for review denied August 4, 1998 (327 Or 448)

In the Matter of the Compensation of
Janice B. Bowen, Claimant.

## LIBERTY NORTHWEST INSURANCE
and Nite Hawk Cafe,
*Petitioners,*

*v.*

Janice B. BOWEN,
*Respondent.*

(WCB 96-00358; CA A95579)

954 P2d 844

Conway C. McAllister argued the cause for petitioners. On the brief was Alexander D. Libmann.

Linda C. Love argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, Haselton, Judge, and Rossman, Senior Judge.

HASELTON, J.

**HASELTON, J.**

Employer seeks review of a Workers' Compensation Board Order on Review that, in pertinent part, set aside employer's denial of claimant's current occupational disease claim for cervical degenerative disc disease. The Board determined that a September 1993 stipulation between the parties, which awarded claimant an eight percent unscheduled disability on a thoracic compression fracture arising out of a November 1991 workplace injury, and which dismissed "all issues raised or raisable," did not preclude claimant's current claim. We agree with the Board and affirm.

Claimant worked as a waitress for 36 years and worked at the Nite Hawk Cafe in Portland from 1990 through July 1995. On November 4, 1991, claimant suffered a compensable injury while lifting a heavy container of milk at work. Claimant's physician, Dr. Brett, diagnosed two separate conditions—(1) a T-8 compression fracture and (2) bilateral C6 nerve root impingement from spondylitic disease at C5-6—and recommended surgery to address the latter condition. Brett stated that the November 1991 work incident was the major cause of the thoracic compression fracture but that claimant's cervical disc disease was not related to work activities. On November 27, 1991, Brett performed the recommended cervical surgery, and he billed claimant's private medical insurance for the expenses. On January 23, 1992, employer accepted the T-8 compression fracture.

Thereafter, on April 13, 1992, claimant requested a hearing, contending that employer's acceptance should be expanded to include the cervical disc condition. Claimant's request for hearing identifies the date of injury as November 4, 1991. On June 4, 1992, before any hearing occurred, claimant withdrew that request, and on June 18, 1992, the Board issued an order dismissing "the matter" (*i.e.*, the request that the scope of acceptance be expanded to include the cervical condition).

On January 13, 1993, a determination order was issued, closing the thoracic compression claim and awarding

claimant three percent unscheduled permanent partial disability. An order on reconsideration confirmed that award, and plaintiff filed a request for hearing challenging that result. On September 3, 1993, before the requested hearing occurred, the parties negotiated a settlement. Pursuant to a Stipulation and Order, employer agreed that claimant was entitled to eight percent unscheduled permanent disability "for injury to her thoracic spine." The Stipulation and Order further provided:

"The parties agree to settle all issues raised or raisable at this time as follows:

"* * * * *

"The Request for Hearing is dismissed with prejudice, as are all issues raised or raisable."

In August 1994, Brett again performed cervical surgery on claimant, for which she made no claim. Claimant did not seek treatment again until July 1995, when she saw a different doctor, Dr. Hoggard, to whom she complained of "severe pain in her mid-back and neck radiating to her chest and hands." Hoggard referred claimant to Dr. Bell, who diagnosed symptoms of cervical radiculopathy and noted that claimant's pain was a recurrence of a past problem.

On August 23, 1995, claimant filed a claim for her "back." Employer denied the claim, and claimant requested a hearing, during which, as the Board found:

"claimant clarified the conditions for which she was filing a claim. Claimant alleged that her compensable conditions consisted of cervical and thoracic degenerative disc disease, cervical and lumbosacral strain, and myofascial pain."

With respect to cervical degenerative disc disease,[1] claimant presented evidence that her work activities for over 36 years as a waitress, including her work for employer, were the major contributing cause of her cervical degenerative disc disease and that employer was responsible under the last injurious exposure rule.

---

[1] Neither party raises any issues on review with respect to claimant's other alleged conditions.

The administrative law judge (ALJ) determined that the September 3, 1993, Stipulation and Order barred claimant's claim. In particular, the ALJ concluded that the compensability of the cervical condition could have been addressed before the parties executed that Stipulation and, consequently, the claim was precluded as "raised or raisable" at that time.

Claimant sought review. The Board concluded that the Stipulation did not bar the cervical condition claim. In particular, it determined that the compensability of the cervical condition could not have been raised prior to the date the Stipulation was executed because (1) no doctor had linked claimant's cervical disc condition with work activities at the time of the Stipulation, and (2) claimant's cervical claim, which she brought on an occupational disease theory, "arises out of a different factual transaction than the November 1991 injury claim." Proceeding to the merits, the Board determined that claimant's cervical disc condition was compensable and that employer was responsible under the last injurious exposure rule.

Employer seeks review of the Board's order. Employer's sole assignment of error challenges the Board's determination that the September 3, 1993, Stipulation was not preclusive.[2] Thus, the dispute reduces to the scope and application of the 1993 Stipulation's "all issues raised or raisable" language. Neither party contends that the Stipulation is ambiguous, and we agree that it is not. Accordingly, its proper construction is a matter of law. *Good Samaritan Hospital v. Stoddard*, 126 Or App 69, 72-73, 867 P2d 543, *rev den* 319 Or 572 (1994).

The Stipulation purports to preclude relitigation of all *"issues"*—not "claims"—raised or raisable as of September 1993. In the context of the entire agreement, "issues" refers necessarily to matters relating to the broader subject of the settlement. That subject could, reasonably, be described as either (a) claimant's injury—*i.e.*, the "injury to her thoracic

---

[2] Employer does not contest the Board's determination as to compensability and responsibility.

spine," or (b) the November 4, 1991, on-the-job lifting incident. *See generally Drews v. EBI Companies,* 310 Or 134, 146-47, 795 P2d 531 (1990) (claim preclusion focuses on whether prior proceeding was based on the same transaction: "A worker who is aware that it is possible that her physical condition is the product of either an occupational disease or a job-related traumatic injury may not bring two successive compensation claims seeking the same relief *for the same condition.*" (emphasis supplied)).

We need not decide whether the referent of "all issues" was claimant's injury, the work incident, or both, because, in all events, claimant's present claim would not be precluded under any of those readings. Claimant's current claim for degenerative cervical disc disease is unrelated to her thoracic compression fracture. *Compare SAIF v. Wolff,* 148 Or App 296, 299-300, 939 P2d 630, *adhered to on recons* 151 Or App 398, 952 P2d 1036 (1997) (stipulation dismissing all issues raised or raisable with respect to the claimant's accepted knee condition barred the claimant from seeking compensation for related knee condition that was diagnosed before stipulation was executed). Nor does that claim, an occupational disease claim, arise from the November 4, 1991, incident. Rather it arises from the cumulative effect of 36 years of being a waitress.[3] Consequently, in pursuing her current cervical condition claim, claimant was not litigating an "issue raised or raisable" in the context of the 1993 Stipulation.

The fact that claimant sought to expand insurer's original acceptance to include the cervical condition as an industrial injury resulting from the November 4, 1991, incident does not alter the analysis or the result. Claimant unilaterally withdrew that request 15 months before the September 1993 Stipulation. The Stipulation *may* have foreclosed any resuscitation of that industrial injury claim, in that it arose out of the November 4, 1991, incident. But nothing in the Stipulation, or in any other evidence in the record,

---

[3] There is no suggestion in the record that the November 4, 1991, incident somehow contributed to claimant's cervical condition.

suggests that the Stipulation contemplated, much less foreclosed, an occupational disease claim for cervical degenerative disc disease. *Compare Safeway Stores, Inc. v. Seney*, 124 Or App 450, 454, 863 P2d 528 (1993) ("Both employer and claimant believed that the November injury was covered by the settlement.").

Finally, employer's reliance on *Stoddard* and *Seney* is misplaced. Those cases are materially distinguishable. In *Stoddard*, the claimant suffered a compensable injury to her wrist, which the employer accepted. Thereafter, after the claimant complained of continued pain in her forearm, her doctor diagnosed radial nerve entrapment and requested authorization for surgery from the employer's claim processor. Before authorization was given, or a denial was rendered, the claimant and the employer negotiated a settlement on the wrist claim. Subsequently, the employer denied the nerve entrapment claim, asserting that it was resolved by the settlement. The Board disagreed, but we reversed. We held that the settlement expressly dismissed all issues related to the wrist claim, and, because the Board found that the nerve entrapment was related to the wrist injury, the settlement barred any claim for the nerve entrapment. 126 Or App at 73 (characterizing stipulated settlement as resolving "all issues *that relate to the January 1990 injury*"). (Emphasis supplied.)

The crucial difference between this case and *Stoddard* is that, there, after the stipulation was executed, the claimant made another claim based on the settled wrist claim. The claimant actually argued that the nerve entrapment was caused by the original wrist injury *after* the stipulation was negotiated. Here, claimant's 1995 cervical claim has no relationship to the settled 1991 thoracic compression claim. There was no finding by the Board, and there is no evidence in the record, linking the cervical condition with the 1991 injury. Nor does claimant, as did the claimant in *Stoddard*, contend that the two are connected in any way.

In *Seney*, the claimant compensably injured his right shoulder while working as a truck driver. His claim was accepted and, eventually, a determination order was issued awarding permanent partial disability. The claimant

requested a hearing. The parties began settlement negotiations, after which the claimant suffered another shoulder injury that his doctor characterized as an aggravation of the former injury. The claimant requested temporary disability benefits but the employer denied his entitlement to benefits. Subsequently, the parties negotiated a stipulated settlement resolving all issues "raised or raisable" and resolving the appeal of the determination order. Thereafter, the claimant's doctor "reversed his previous opinion" and stated that the "aggravation" episode was actually a new injury. The referee and the Board concluded that the stipulation did not bar the new injury claim.

We reversed. We reasoned that both parties believed, before the execution of the settlement, that the reinjury was an aggravation of the former injury, and that both parties believed that the aggravation was negotiated as part of the settlement. *Seney*, 124 Or App at 454. Thus, the claimant could not recharacterize his claim and escape the bar of the stipulation. In this case, as noted, there is no evidence that either party understood the Stipulation to encompass the current occupational disease claim.

The 1993 Stipulation does not bar claimant's occupational disease claim for cervical degenerative disc condition.

Affirmed.