HOLNAM, INC. and Pacific Employers
Insurance Company, Petitioners,

v.

INDUSTRIAL CLAIM APPEALS OF-
FICE of the State of Colorado and
Manuel Vigil, Respondents.

No. 05CA2011.

Colorado Court of Appeals,
Div. III.

Dec. 28, 2006.

Rehearing Denied Feb. 1, 2007.

Treece, Alfrey, Musat & Bosworth, P.C., Kathleen M. Fairbanks, William L. McCaslin, Denver, Colorado, for Petitioners.

No Appearance for Respondent Industrial Claim Appeals Office.

Law Offices of Regina M. Walsh Adams, Regina M. Walsh Adams, Michael D. Mullison, Greeley, Colorado, for Respondent Manuel Vigil.

Opinion by Judge CASEBOLT.

Holnam, Inc. and its insurer, Pacific Employers Insurance Company (collectively employer), seek review of a final order of the Industrial Claim Appeals Office (Panel) awarding Manuel Vigil (claimant) temporary total disability benefits commencing August 2001 for an occupational disease involving his cervical spine. We set aside the order and remand.

Claimant suffered an admitted injury to his left shoulder in July 1999, and he injured his right shoulder while undergoing postsurgery medical care. Following surgery on both shoulders, the treating physician placed claimant at maximum medical improvement (MMI) on October 6, 2000. Claimant returned to modified work with employer.

Another physician performed a division-sponsored independent medical examination (DIME) in March 2001, during which claimant complained of symptoms in his cervical spine. The DIME physician agreed that claimant had reached MMI for his bilateral shoulder injuries, but concluded that he could not attribute claimant's cervical complaints to his 1999 injury.

Claimant continued to work for employer until August 2001. At that time, the treating physician noted that claimant's condition had deteriorated significantly since MMI and opined that his deterioration was precipitated by activities at work.

Following an examination conducted by a physician hired by employer approximately one month later, that physician (IME physician) opined that claimant's cervical spine complaints were the result of a degenerative process in his spine due to his age, not as a result of the 1999 work injury. However, another physician examined claimant in December 2001 and opined that the cervical condition was most likely the result of either the original 1999 injury or overuse of scapular motion to substitute for loss of glenohumeral motion in the shoulder.

In January 2002, an administrative law judge (first ALJ) conducted a hearing to address whether claimant had reached MMI; whether he was entitled to ongoing temporary disability benefits from August 2001, the date he ceased working for employer; the extent of permanent medical impairment; and whether claimant's cervical condition was related to the industrial injury of July 1999. Claimant testified that he had complained of neck pain since the injury to his left shoul-

der. He argued that his cervical condition was related to the July 1999 industrial injury and that he was not at MMI because he required additional treatment for his neck.

The first ALJ credited the testimony of the IME physician and found that it was medically improbable that claimant's cervical spine condition was caused by the industrial injury because the mechanism of the injury did not involve torsion or a whiplash type of injury. The first ALJ concluded that claimant had failed to overcome by clear and convincing evidence the DIME physician's opinion that the cervical symptoms were unrelated to the 1999 injury, and therefore the first ALJ denied that part of the claim and dismissed it.

About a month later, claimant filed a separate claim, which was eventually consolidated with this one, asserting that he had sustained an occupational disease to his cervical spine that was incurred during the repetitive performance of modified work for employer after reaching MMI. Employer objected, arguing that the compensability of the cervical spine component had been previously litigated or could have been, and the separate claim was, therefore, barred by principles of issue preclusion and claim preclusion.

At the hearing in October 2002, with another ALJ (second ALJ) presiding, claimant presented essentially the same evidence concerning his cervical condition that he had presented at the January 2002 hearing. In his written order, the second ALJ determined that issue preclusion did not apply. He acknowledged the first ALJ's determination that claimant's cervical condition was not caused by the July 1999 industrial injury, but the second ALJ concluded that the first ALJ did not, and was not required to, address whether claimant sustained a compensable occupational disease or injury to his cervical spine, but only addressed whether the cervical condition was caused or aggravated by the original injury. The second ALJ did not address employer's claim preclusion argument.

Addressing the merits of the claim, the second ALJ found that claimant had a degenerative process in his cervical spine that was aggravated and accelerated by work activi-ties that required overuse and overcompensation. The second ALJ also found that the cervical symptoms did not pre-exist the 1999 injury, and that claimant's cervical condition was a compensable occupational disease that arose after his 1999 injury. The second ALJ stated that, although claimant's occupational disease was not related to his 1999 injury, his shoulder condition was a precipitating factor contributing to his occupational disease. Therefore, the second ALJ concluded that the claim for an occupational disease was compensable and awarded claimant temporary disability and medical benefits for the cervical condition commencing August 24, 2001. The second ALJ denied and dismissed claimant's request for permanent total disability benefits, finding that such a determination was premature because claimant had not yet reached MMI for the cervical condition.

On appeal, the Panel affirmed, concluding that issue preclusion did not apply. The Panel reasoned that the issue sought to be determined in the second proceeding (whether there was an occupational disease caused by the duties and conditions of the claimant's modified employment) was different from the issue actually determined in the prior proceeding (whether the cervical spine condition was directly aggravated by the 1999 injury, or whether the cervical symptoms were a natural and proximate result of the 1999 injury). The Panel did not address employer's claim preclusion argument. This appeal followed.

Employer asserts that the doctrines of issue preclusion and claim preclusion bar relitigation of the compensability of claimant's cervical condition. We agree that claim preclusion applies and therefore need not address issue preclusion.

■ Issue and claim preclusion principles, although developed in the context of judicial proceedings, may be applied to administrative proceedings as well, including workers' compensation matters. *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44 (Colo.2001); *see also Gose v. Monroe Auto Equip. Co.*, 409 Mich. 147, 294 N.W.2d 165 (1980) (applying claim preclusion); *Million v. State Accident*

*Ins. Fund,* 45 Or.App. 1097, 610 P.2d 285 (1980)(recognizing issue and claim preclusion applicability; employing latter to preclude recovery).

Claim preclusion works to bar the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not. *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604 (Colo.2005). Claim preclusion protects "litigants from the burden of relitigating an identical issue with the same party or his privy and ... promot[es] judicial economy by preventing needless litigation." *Lobato v. Taylor,* 70 P.3d 1152, 1165–66 (Colo.2003) (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979)).

For a claim in a second proceeding to be precluded by a previous judgment, there must exist (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity of or privity between parties to the actions. *Cruz v. Benine,* 984 P.2d 1173, 1176 (Colo.1999).

Here, the determination by the first ALJ is final, inasmuch as it has not been appealed. There is also identity of subject matter because both proceedings involve the scope of employer's liability for the injuries that claimant asserts arose out of the industrial injury and his modified employment which followed that injury. And there is no dispute that there is identity of the parties to both proceedings. Hence, the only remaining dispute is whether there is an identity of claims for relief between the first and second proceedings.

Claimant asserts that his claim for an occupational disease in the second proceeding is different from his claim in the first proceeding that his cervical symptoms were directly aggravated by the 1999 injury or that they were a natural and proximate result of the 1999 injury. Under the circumstances present here, we disagree.

In analyzing whether there is an identity of claims for relief, we do not focus our inquiry on the specific claim asserted or the name given to the claim. Instead, the "same claim or cause of action requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies." *Farmers High Line Canal & Reservoir Co. v. City of Golden,* 975 P.2d 189, 199 (Colo.1999)(citing *State Eng'r v. Smith Cattle, Inc.,* 780 P.2d 546, 549 (Colo.1989)).

In addition, claim preclusion also bars a litigant from splitting claims into separate actions because once judgment is entered in an action it "extinguishes the plaintiff's claim ... includ[ing] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

*Argus Real Estate, Inc. v. E–470 Pub. Highway Auth., supra,* 109 P.3d at 609 (quoting Restatement (Second) of Judgments § 24(1) (1982)). Thus, claim preclusion bars relitigation not only of all claims actually decided, but of all claims that might have been decided if the claims are tied by the same injury. *Farmers High Line Canal & Reservoir Co. v. City of Golden, supra,* 975 P.2d at 199.

Here, claimant contended at the January 2002 hearing that he was not at MMI because he had neck symptoms that were directly related to the 1999 shoulder injury, and he requested compensation for that injury. In the October 2002 hearing, relying upon the same evidence he had introduced at the January hearing, claimant asserted that the modified duties he was assigned to perform between the date he reached MMI in 2000 and August 23, 2001 (when he was prescribed narcotics and precluded from working) made his neck symptoms worse. Claimant conceded at oral argument before us that his physical condition did not change between the two hearings. And, in both proceedings, the injury for which claimant demanded relief was the cervical condition. Hence, it is the same injury, arising from the same transaction or series of connected transactions.

It does not matter that claimant asserted in the second proceeding that his cervical injury was an occupational disease rather than an injury caused by the original 1999

accident. As stated in Restatement, *supra*, § 24 cmt. c:

> That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.

*See* Restatement, *supra*, § 25 cmt. d (having been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground; this does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction, and accordingly the second action should be held barred); *see also Million v. State Accident Ins. Fund, supra* (claim for occupational disease for shoulder difficulties barred by claim preclusion because claimant sought and was denied compensation for shoulder in previous claim arising from accidental industrial injury; claimant could have asserted both the industrial injury and occupational disease theories in the first proceeding, and both arose from the same set of facts); *Gose v. Monroe Auto Equip. Co., supra* (where complete evidence as to claimant's leg disability was presented at a prior hearing that resulted in a finding of no total and permanent disability, and no change in the claimant's physical condition occurred between the first and second hearings, permanent disability claim was barred).

■ While a separate claim for occupational disease based on a prior injury may be asserted under some circumstances, *see Univ. Park Care Ctr. v. Indus. Claim Appeals Office*, 43 P.3d 637 (Colo.App.2001) (evidence supported ALJ's finding that claimant sustained back injury in 1991 and occupational disease of the back in 1999, and that these separately compensable injuries combined to cause temporary disability and need for treatment), there must be some indication that the injuries are separate and caused by an intervening event. *See Price Mine Serv., Inc. v. Indus. Claim Appeals Office*, 64 P.3d 936 (Colo.App.2003)(quasi-course of employment injuries and injuries that are naturally and proximately caused by an industrial injury do not give rise to new claims, but separate intervening causes give rise to new claims); *see also* § 8–40–201(14), C.R.S.2006 (defining occupational disease); *Delta Drywall v. Indus. Claim Appeals Office*, 868 P.2d 1155 (Colo.App.1993)("injury" is traceable to particular time, place, and cause, while occupational disease is acquired in the ordinary course of employment and is a natural incident of employment).

Here, claimant argues that there is an intervening event, that is, the working conditions he experienced performing modified employment from the time he reached MMI to August 2001, and a separate injury. However, there are simply not two separate injuries, because in each claim the injury for which compensation is sought is the cervical condition. Thus, we need not address whether the modified employment working conditions constitute an intervening event.

■ Finally, contrary to claimant's contention, it does not matter that the degree of proof may be different in the two proceedings. It is true that claimant had to overcome the DIME by clear and convincing evidence in the first proceeding, but needed only to prove his occupational disease claim by a preponderance of the evidence in the second proceeding. However, although issue preclusion (collateral estoppel) may be affected by the difference in the burden of proof, *see* Restatement, *supra*, § 28(4), that principle does not translate to the realm of claim preclusion. *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 594 (3d Cir.1989) (claim preclusion applicable even when there are differing standards of proof in the two proceedings).

Accordingly, we conclude that claimant was precluded from litigating whether he had sustained an occupational disease in the second proceeding.

In light of this determination, we need not address employer's remaining contentions.

The order is set aside, and the case is remanded to the Panel with directions to dismiss the claim for an occupational disease

and to conduct further proceedings as may be necessary.

Judge GRAHAM and Judge RUSSEL concur.