Argued and submitted March 12, at the United States Bankruptcy Court, Portland, reversed and remanded for reconsideration August 27, 2003

In the Matter of the Compensation of
Marlin Reynoldson, Claimant.

Marlin REYNOLDSON,
*Petitioner,*

*v.*

MULTNOMAH COUNTY,
*Respondent.*

01-03627; A118299

75 P3d 477

George J. Wall argued the cause for petitioner. With him on the briefs was Welch, Bruun & Green.

Jacqueline A. Weber argued the cause for respondent. With her on the brief was Thomas Sponsler.

Before Landau, Presiding Judge, and Armstrong and Wollheim, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Claimant seeks judicial review of a Workers' Compensation Board order that awarded him compensation for his occupational hearing loss at the rate that applied on the date that he was last exposed to noise at work. He contends that the proper rate for the award is the rate that applied on the date that he first sought medical treatment for his hearing loss. We review for legal error, ORS 183.482(8), and reverse.

Claimant was employed as a sheriff's deputy with Multnomah County between 1962 and 1987. Claimant filed a claim for hearing loss with Multnomah County in November 2000. Multnomah County accepted a claim for disabling bilateral hearing loss and issued a notice of closure that awarded claimant 15 percent scheduled permanent partial disability (PPD), to be paid at the rate at $347.51 per degree. On reconsideration, the appellate review unit increased claimant's award to 17.66 percent scheduled PPD but kept the rate of $347.51 per degree. Claimant requested a hearing to contest the PPD rate, arguing that the award should be paid at $511.29 per degree, which was the compensation rate in effect in 2000 when he first sought medical treatment for his condition. After a hearing, the board issued an order that upheld the award at the $347.51 rate.

Occupational disease claims such as claimant's are processed the same as claims for accidental injuries. ORS 656.807(3). ORS 656.202(2) provides:

> "Except as otherwise provided by law, payment of benefits for injuries or deaths under this chapter shall be continued as authorized, and in the amounts provided for, by the law in force at the time the injury giving rise to the right to compensation occurred."

Unlike an accidental injury, an occupational disease often cannot be tied to a discrete injury-causing event. An occupational disease may develop gradually and may not manifest itself until well after the last exposure to the disease-causing agent or condition. In that light, we have held that "[t]he date of injury in an occupational disease case is either the date of disability or the date when medical treatment is first

sought." *Papen v. Willamina Lumber Co.*, 123 Or App 249, 254, 859 P2d 1166 (1993). Under that principle, the date of claimant's last injurious exposure to noise at work in 1987 was not the date of his injury.

Multnomah County contends, however, that the date of injury under ORS 656.202(2) for an occupational disease is different from the date of injury for an occupational disease under the other workers' compensation statutes that are concerned with the timing of injuries. *Johnson v. SAIF*, 78 Or App 143, 714 P2d 1098, *rev den*, 301 Or 240 (1986), supports that contention. As we will explain, however, *Johnson* conflicts with our later decision in *Papen*. We reconcile that conflict by overruling *Johnson*.

*Johnson* involved a claim for an occupational disease, asbestosis, that became disabling in 1983 but that arose from a work-related exposure to asbestos that ended in 1942. Significantly, the legislature had enacted the statute that makes occupational diseases compensable under the Workers' Compensation Law in 1943. *Johnson*, 78 Or App at 145. Consequently, claimant was seeking compensation in 1983 for an occupational disease that developed as a result of asbestos exposure that occurred at a time when diseases resulting from that exposure were *not* compensable.

The claimant relied on ORS 656.202(2) as support for his claim. He reasoned that the date of injury for an occupational disease is the date that a claimant becomes disabled from the disease or seeks treatment for it, which, in his case, was 1983. He read ORS 656.202(2) to make the law that existed on the date of his injury the law that applied to his claim. He argued that the law in 1983 made occupational diseases such as asbestosis compensable so, in his view, his disease was compensable.

We rejected that conclusion. We accepted the premise that ORS 656.202(2) made applicable to the claimant's claim the law that existed on the date of his injury. However, we interpreted the date of injury under ORS 656.202(2) to be the last date on which the claimant was exposed to asbestos. That date was in 1942, which predated the adoption of the

statute that made occupational diseases compensable. Consequently, we held that the claimant was not entitled to receive compensation for his disease. *Johnson,* 78 Or App at 145-48.

*Papen,* in turn, involved a hearing-loss claim. Relying on the interpretation of ORS 656.202(2) in *Johnson,* the claimant in *Papen* argued that he should be paid for his hearing loss under the law that applied in 1990, when he was last exposed to noise at work, rather than under the law that applied in 1987, when he first sought medical treatment for his hearing loss. We rejected that argument, concluding that the date of injury under ORS 656.202(2) for an occupational disease *is* the date of disability or the date of first medical treatment, *not* the last date of exposure to the disease-causing agent or condition. We said in *Papen* that *Johnson* could be distinguished from our decision in *Papen,* but we are now persuaded that the cases are irreconcilable and that the interpretation given ORS 656.202(2) in *Papen* is the correct interpretation.

We confirm the interpretation given ORS 656.202(2) in *Papen* and overrule *Johnson*'s contrary interpretation because we conclude that the statute cannot be interpreted to mean what we said that it means in *Johnson.* The statute provides that the laws regarding payment of compensation that are "in force at the time [that] the injury giving rise to the right to compensation occur[s]" remain in force for the injury notwithstanding later changes in those laws. In occupational disease cases, the injury to which the statute refers is the occupational disease for which compensation is sought. In *Johnson,* for example, the disease was asbestosis. By its nature, asbestosis takes a number of years to develop after the exposure to the asbestos fibers that causes the disease. Asbestosis is not unique in respect to its timing. Many diseases take a number of years to develop after exposure to the agents or conditions that cause them. Consequently, the occupational diseases to which ORS 656.202(2) is addressed cannot be understood *to occur* when the last exposure to the disease-causing agents occurs. The statute necessarily refers to the point at which the *diseases* occur, not the point at

which the last exposure to the disease-causing agents or conditions occurs. *See, e.g., Brown v. SAIF*, 79 Or App 205, 208-09, 717 P2d 1289, *rev den*, 301 Or 666 (1986) (exposure to disease-causing substance does not constitute injury).[1]

In summary, if the legislature had intended the laws on payment of compensation for occupational diseases to be the laws in effect on the last date of *exposure* to a disease-causing agent or condition, then it would have written ORS 656.202(2) to say that. As written, ORS 656.202(2) cannot be interpreted to say that. For that reason alone, the interpretation that we gave ORS 656.202(2) in *Johnson* is untenable.

An interpretation of ORS 656.202(2) that makes the date of disability or first medical treatment the date of injury for an occupational disease also makes sense. The level of compensation that the legislature sets for compensable injuries is intended to address the needs of employees when they become injured and disabled. As in this case, occupational diseases can have long latency periods. Claimant was last exposed to noise at work in 1987, but he apparently did not suffer any noticeable effect from that exposure until he sought treatment for his hearing loss in 2000. That means that, to the extent that claimant suffers disability from his hearing loss, he first suffered that disability in 2000. An interpretation of the statute that makes the date of disability the date of injury means that claimant will be compensated for his disability at the rate that applied when he suffered the disability rather than at the rate that applied 13 years before he suffered it.

For all of the foregoing reasons, we conclude that we erred in *Johnson* in interpreting ORS 656.202(2) to make the date of injury for an occupational disease the date of last exposure to the disease-causing agent or condition. We hold that the date of injury under the statute is the date of disability from the disease or the date of the first medical treatment of it. We overrule *Johnson* to the extent that it adopted a contrary interpretation of the statute.

---

[1] Those dates might coincide in some occupational disease cases, but that would depend on the disease and the circumstances of the case. Even then, the statute would make the controlling date the date of disability or first medical treatment, that is, the date when the *disease* occurs.

Here, there is no evidence of a disability date for claimant's occupational hearing loss that was earlier than the date on which he first sought medical treatment for the loss. Thus, claimant is correct that the proper rate of compensation in this case is the rate that was in effect when he first sought medical treatment. We therefore reverse and remand the case to the board for it to award claimant PPD at the proper rate.

Reversed and remanded for reconsideration.