Argued and submitted July 14, affirmed November 2, 2011

In the Matter of the Compensation of
Timothy R. Hanscam, Claimant.
SAIF CORPORATION
and Elams Home Furnishings,
*Petitioners,*

*v.*

Timothy R. HANSCAM,
*Respondent.*

Workers' Compensation Board
0900239; A144869

266 P3d 124

David L. Runner argued the cause and filed the reply brief for petitioners. On the opening brief was Julene M. Quinn.

Robert K. Udziela argued the cause for respondent. With him on the brief was Martin L. Alvey.

Before Ortega, Presiding Judge, and Nakamoto, Judge, and Rosenblum, Senior Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

SAIF, as insurer for Elams Home Furnishings, seeks review of an order of the Workers' Compensation Board determining the "date of injury" for claimant's occupational disease claim. The date of injury determines the applicable rate of compensation that claimant receives for permanent partial disability (PPD) under ORS 656.214. ORS 656.202(2). We conclude that the board did not err and affirm.

For his entire adult life, claimant's work has involved physical labor and strain on the knees. In 1987 and 1988, while working for a Washington employer, claimant underwent arthroscopic surgeries on his left and right knees, respectively. The surgeries revealed multiple loose cartilaginous bodies and degenerative changes in both knees. Claimant did not seek workers' compensation benefits for those surgeries.

In 2000, claimant began working for SAIF's insured, loading and unloading furniture and appliances. In 2002, claimant consulted his primary care physician about various problems, including knee stiffness in the morning. Claimant's knee pain continued, and in August 2005, he saw Dr. Blackstone, who took x-rays that revealed bilateral advanced degenerative joint disease. On October 3, 2005, claimant saw Dr. Slattery, an orthopedic surgeon, who recommended bilateral total knee replacement. Claimant filed a claim for a bilateral knee condition on that date.

SAIF denied the claim, but in December 2007, the board set aside SAIF's denial after determining under the last injurious exposure rule that, as opined by Dr. Bowman, an orthopedic surgeon, "claimant's lifetime of employment conditions was the major contributing cause of his claimed bilateral knee condition." The ALJ's order, adopted by the board, stated that Bowman "explained that although claimant's history was consistent with his initial osteoarthritis being idiopathic, his work activity accelerated the osteoarthritic changes to the point that work became the major contributing cause of his current condition." Bowman identified claimant's current condition as "end-stage osteoarthritis." Based on Bowman's opinion, the ALJ found that

"[c]laimant's occupational exposure was the major contributing cause of his bilateral condition diagnosed as osteoarthritis." The board, in affirming the ALJ, found that claimant had established the compensability of his bilateral knee condition and ordered that SAIF's denial be set aside.

Thereafter, SAIF accepted a claim for "bilateral knee osteoarthritis," with a "date of injury" of October 3, 2005, which was the date that the claim had been filed. On October 22, 2008, SAIF issued a notice closing the claim, stating a "date of injury" of August 1, 2000, but calculating claimant's benefits for PPD based on a "date of injury" of February 29, 1988.[1]

Claimant requested reconsideration, contending that the correct date of injury was October 3, 2005, when claimant first sought treatment with Slattery and filed his claim for benefits. The Appellate Review Unit agreed with claimant that October 3, 2005, was the appropriate date of injury and calculated claimant's PPD award accordingly.

SAIF requested a hearing, contending that the date of injury stated in the notice of closure was correct under ORS 656.202(2), because the occupational disease for which claimant received compensation was first treated in 1987 and 1988. SAIF asserted, and continues to assert, that claimant has only one condition—knee osteoarthritis—and that its "end stage" is not a separate condition but is simply a more advanced stage of the same condition. Thus, in SAIF's view, it is not appropriate to treat the end stage of claimant's condition as separate from the entire osteoarthritis. Accordingly, SAIF contends that in determining the date of injury for purpose of ORS 656.202(2), one must simply refer to when claimant first sought treatment or became disabled as a result of his knee osteoarthritis, and that clearly occurred by 1988, when claimant underwent his second knee surgery. The ALJ

---

[1] SAIF acknowledges that the "date of injury" of August 1, 2000, listed at the top of the notice of closure did not bear any relationship to claimant's injury, but rather was the earliest date that its computer system would accept. SAIF asserts, however, that the actual date of injury is February 29, 1988, when claimant had his second knee surgery and, thus, had a condition in both knees. We note that "work disability" benefits under ORS 656.214 are available only to workers injured on or after January 1, 2005.

agreed with SAIF and reinstated the notice of closure, determining that, under *Reynoldson v. Multnomah County*, 189 Or App 327, 75 P3d 477, *rev den*, 336 Or 192 (2003), the proper date of injury was the date that claimant had first sought treatment for his bilateral osteoarthritic knee condition, February 29, 1988.

On appeal to the board, the parties agreed that *Reynoldson* controls and that the "date of injury" is the date of disability from the disease or the date of the first medical treatment, whichever is earlier. *See* 189 Or App at 332. They also agreed that the "date of injury" determines the PPD rate for claimant's bilateral knee condition.[2] Claimant continued to assert that October 3, 2005, was the date of injury, and SAIF continued to assert that the proper date was February 29, 1988.

In reversing the ALJ's order and holding that the correct date of injury was October 3, 2005, the board emphasized that, under ORS 656.202(2) and *Reynoldson*, the rate of PPD is to be determined by the laws "in force at the time that *the injury giving rise to the right to compensation* occurs." The board quoted *Reynoldson*'s statement that "[i]n occupational disease cases, the injury to which the statute refers is *the occupational disease for which compensation is sought.*" 189 Or App at 331 (emphasis added).

The board then proceeded to "determine the occupational disease that forms the basis for claimant's PPD award." The board explained that Bowman, on whose opinion the board had relied, had concluded that, although claimant's work activities throughout his lifetime had contributed to the osteoarthritic condition, claimant's condition did not become *compensable—i.e.*, the work did not become its major contributing cause—until his work exposure with SAIF's insured from 2000 to 2005, during which time his knee osteoarthritis advanced to "end-stage." Thus, as the board interpreted Bowman's opinion, it was not until after claimant began

---

[2] ORS 656.202(2) provides:

"Except as otherwise provided by law, payment of benefits for injuries or deaths under this chapter shall be continued as authorized, and in the amounts provided for, by the law in force at the time the injury giving rise to the right to compensation occurred."

working for SAIF's insured that the work exposure of claimant's entire work experience gave rise to an occupational disease, "end-stage osteoarthritis." Accordingly, the board determined that the "date of injury" was October 3, 2005, the date when claimant had filed his claim and first sought treatment for his osteoarthritis.

SAIF contends on review that the board has unlawfully "redetermined the compensable condition different from what was found compensable," disregarding the preclusive effect of its previous order, and has disregarded this court's decision in *Reynoldson*. We address first SAIF's contention that the board is precluded from characterizing claimant's compensable occupational disease as "end-stage osteoarthritis."

SAIF contends that issue preclusion applies, citing *Drews v. EBI Companies*, 310 Or 134, 795 P2d 531 (1989), and its rule that, when an issue has been formerly adjudicated between two parties and the determination was essential to the final decision reached, future litigation on the issue is precluded. 310 Or at 139-40. In SAIF's view, claimant has but one condition, osteoarthritis, and the description of claimant's condition in the December 2007 board order as "bilateral knee osteoarthritis" actually determined a litigated issue—that claimant's compensable occupational disease was the entire osteoarthritis condition, not just the "end-stage" portion. SAIF asserts that the board now errs in redefining the nature of the occupational disease and thereby limiting it to a condition that is more specific than the condition initially found to be compensable. Further, SAIF contends, the notice of acceptance also described claimant's condition as bilateral knee osteoarthritis, and claimant did not challenge the notice of acceptance, as he could have, under ORS 656.262(2). Thus, SAIF contends, claimant's *entire* condition must be compensated, and the board was precluded from subsequently redefining claimant's condition as something less than the *entire* osteoarthritis.[3]

---

[3] We note the irony of SAIF's contention that claimant's *entire* condition must be "compensated," when the practical effect of the argument is a dramatic reduction in claimant's benefits.

There are two flaws in SAIF's reasoning. First, SAIF misunderstands the board's order. The board did not attempt to distinguish claimant's "end-stage" osteoarthritis as a separate condition from the bilateral osteoarthritis or to redefine the condition. The board simply clarified that, based on Bowman's opinion, claimant's bilateral osteoarthritis did not become compensable—*i.e.*, the work did not become its major contributing cause—until during claimant's employment with SAIF's insured, when the condition advanced to "end-stage." Thus, the board characterized the compensable condition as "end-stage osteoarthritis."

Furthermore, up until the date SAIF issued its notice of closure, the parties had been in agreement that the date of injury was October 3, 2005. On its denial form, SAIF had listed the date of injury as October 3, 2005, and that was also the date of injury stated in the ALJ's order of March 3, 2007, and the board's order of December 4, 2007. SAIF's notice of acceptance also listed a date of injury of October 3, 2005. There was no reason for claimant to believe that there was any dispute as to the date of injury; thus, there was no reason for claimant to argue for a more particularized characterization of the osteoarthritic condition. It was not until the notice of closure, which identified the date of injury as August 1, 2000, that the date of injury—and, hence, the precise characterization of claimant's bilateral osteoarthritis— became disputed. Those issues were not actually litigated in the earlier hearing. We conclude that the board was not precluded by its 2007 order from clarifying in 2010 that claimant's condition did not become compensable until it was "end-stage." The board then declined to assign to the claim a date of injury for purposes of PPD in 1988, some 17 years before the condition had developed into a compensable occupational disease for which claimant sought treatment.

On the merits of the board's order, SAIF next contends that the order clashes with this court's opinion in *Reynoldson*, a case in which we addressed the determination of the date of injury under ORS 656.202(2) in the context of an occupational disease claim. Because of its centrality to the resolution of this case, we examine *Reynoldson* in some detail.

In *Reynoldson*, the claimant was employed by the same employer for 25 years. Thirteen years after his employment ended, he filed a claim for hearing loss. The employer accepted the claim and paid the claimant benefits based on the PPD rate that had been in effect when the claimant left his employment in 1987. The claimant requested a hearing, seeking to have his benefits for PPD calculated based on the rates in effect in 2000, when he first sought treatment for his hearing loss. The ALJ and the board upheld the notice of closure. 189 Or App at 329.

On the claimant's petition for judicial review, we reversed the board. We explained, quoting from *Papen v. Willamina Lumber Co.*, 123 Or App 249, 254, 859 P2d 1166 (1993), that under ORS 656.202(2), "[t]he date of injury in an occupational disease case is either the date of disability or the date when medical treatment is first sought." *Reynoldson*, 189 Or App at 329-30. We explained, further, that "[i]n occupational disease cases, the injury to which the statute refers is *the occupational disease for which compensation is sought.*" *Id.* at 331 (emphasis added). We rejected the employer's contention that the date of injury was the date of the last disease-causing exposure, stating that ORS 656.202(2) "necessarily refers to the point at which the *diseases* occur[.]" *Id.* (emphasis in original). In explaining why it makes sense to interpret the statute to require that the "date of injury" be the date of disability or first medical treatment, rather than the date of last exposure, we said:

> "The level of compensation that the legislature sets for compensable injuries is intended to address the needs of employees when they become injured and disabled. As in this case, occupational diseases can have long latency periods. Claimant was last exposed to noise at work in 1987, but he apparently did not suffer any noticeable effect from that exposure until he sought treatment for his hearing loss in 2000. That means that, to the extent that claimant suffers disability from his hearing loss, he first suffered that disability in 2000. An interpretation of the statute that makes the date of disability the date of injury means that claimant will be compensated for his disability at the rate that applied when he suffered the disability rather than at the rate that applied 13 years before he suffered it."

*Id.* at 332.

In SAIF's view, under *Reynoldson*, claimant's "date of injury" is the date he first sought treatment for his osteoarthritis, in 1987 or 1988. In claimant's view, because the board determined, based on Bowman's opinion, that claimant's osteoarthritis did not become a compensable occupational disease until it was "end-stage," the "date of injury" is the date he became disabled or first sought treatment for what constituted a compensable condition, which the board found was October 3, 2005. *Reynoldson* supports claimant's view and the board's interpretation.

In *Reynoldson*, we emphasized that, in the occupational disease context, the "injury" to which ORS 656.202(2) refers is "the occupational disease for which compensation is sought" and "necessarily refers to the point at which the *diseases* occur." *Id.* at 331 (emphasis in original). Here, the board has determined, based on the medical evidence, that claimant's osteoarthritis did not become a compensable occupational disease until it was "end-stage," during claimant's employment with SAIF's insured. Under *Reynoldson*, claimant's PPD benefits should be calculated based on a date of injury as of the time claimant had an occupational disease—when claimant's work was the major contributing cause of the condition. It would make no sense, as SAIF asserts, to calculate claimant's PPD benefits based on prevailing rates of compensation close to two decades before he had a compensable occupational disease in light of the legislature's intent to provide a level of workers' compensation benefits that addresses "the needs of employees when they become injured and disabled." *Id.* at 332. The board did not err in concluding that the date of injury occurred in 2005, when claimant both had an occupational disease and sought treatment for it.[4]

Affirmed.

---

[4] We decline to consider SAIF's argument, made for the first time on judicial review, that if this court agrees with the board that claimant's injury did not occur in 1988, then the correct date of injury is in August 2005, when claimant saw Blackstone, rather than October 3, 2005, when he consulted Slattery, as found by the board.