Argued and submitted March 31, 2011, reversed and remanded October 24, 2012

Stephen A. LUCAS,
*Plaintiff-Appellant,*

*v.*

LAKE COUNTY,
a political subdivision of the State of Oregon,
*Defendant-Respondent.*

Lake County Circuit Court
070093CV; A144826

289 P3d 320

David C. Force argued the cause and filed the briefs for appellant.

Matthew J. Kalmanson argued the cause for respondent. With him on the briefs was Hoffman Hart & Wagner LLP.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

### HASELTON, C. J.

Plaintiff Stephen Lucas appeals a judgment in favor of defendant Lake County, contending that the trial court erred in (1) dismissing, on summary judgment, his blacklisting claim as being barred by claim preclusion arising from prior federal litigation between the parties and (2) granting judgment on the pleadings as to his wrongful discharge claim on the ground that the complaint did not sufficiently allege that plaintiff's termination contravened an "important public duty." Defendant cross-assigns error, contending that, because plaintiff's wrongful discharge claim was also barred by claim preclusion principles, the trial court erred in denying its motion for summary judgment as to that claim. As amplified below, we conclude that claim preclusion did not bar either of plaintiff's claims and, for that reason, the trial court erred in allowing summary judgment as to the blacklisting claim but properly denied it as to the wrongful discharge claim. We further conclude that, because plaintiff alleged that his termination contravened an "important public duty," the trial court erred in allowing judgment on the pleadings as to the wrongful discharge claim. Accordingly, we reverse and remand.

Because the circumstances of this case involve litigation between the parties in both federal and state courts, as well as extensive motion practice in the state court action from which this appeal originates, the operative procedural facts, although undisputed, are somewhat complicated. For that reason, our recitation of those facts is necessarily detailed.

On April 28, 2005, defendant terminated plaintiff, a deputy sheriff sergeant, from his position as the jail manager of the Lake County Jail. At that time, the Lake County Sheriff did not tell plaintiff the reason for his termination.

In July 2006, plaintiff filed an action against defendant in the United States District Court for the District of Oregon alleging, among other things, that defendant violated the Americans with Disabilities Act (ADA), 42 USC § 12112, by terminating his employment because of a permanent partial disability related to his former military service or a perceived disability. Plaintiff's complaint also

alleged that the federal court had supplemental jurisdiction over plaintiff's state law claims for unlawful employment practices and defamation.[1] Specifically, plaintiff alleged that defendant had committed unlawful employment practices by (1) terminating plaintiff because of a disability or a perceived disability, in violation of ORS 659A.112; (2) terminating plaintiff because he had filed a workers' compensation claim during his employment, in violation of ORS 659A.040; and (3) fraudulently inducing plaintiff, in violation of ORS 659.815, to move to Oregon to work for defendant based on representations that he would be hired as a "Sergeant/Jail Manager" at a commensurate salary when, for the first few months of his employment, he held the position of corrections officer at a lower salary because of "dissension in a collective bargaining unit."

As pertinent to the issues on appeal, plaintiff also alleged a claim for defamation. That claim was essentially predicated on an allegation that, "[o]n or about April 27, 200[5]"—the day *before* plaintiff's termination—defendant's Law Enforcement Data System (LEDS) representative sent an e-mail to the state-wide LEDS Training and Education Manager falsely indicating that "plaintiff had cheated on an examination required for access to [LEDS] and had encouraged another employee to do so as well." Further, plaintiff alleged that the "false statements were defamatory, and

---

[1] 28 USC section 1367(a) provides, in part, that,

"in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

However, the court

"may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

"(1) the claim raises a novel or complex issue of State law,

"(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

"(3) the district court has dismissed all claims over which it has original jurisdiction, or

"(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 USC § 1367(c).

were intended by defendant to injure plaintiff's reputation as a law enforcement officer and to interfere with his ability to obtain other employment in that field after his discharge by defendant." Plaintiff sought $100,000 in damages for injury to his reputation and extreme emotional distress.

The federal court ordered the parties to complete discovery by March 9, 2007. Approximately a month before that deadline, defendant took plaintiff's deposition. During that deposition, plaintiff's attorney indicated that he anticipated that he would need to amend plaintiff's complaint based on information that he "ha[d] just received th[at] week."

Although the record does not demonstrate that plaintiff filed a motion to amend his complaint in federal court, he filed a motion to extend the discovery deadline. In that motion, plaintiff's attorney explained that he sought to investigate a new theory about plaintiff's termination— *viz.*, that defendant had wrongfully terminated plaintiff in retaliation for, and to conceal the results of, his investigation concerning an incident in which a deputy under his supervision had required a female inmate at the Lake County Jail to engage in oral sex. According to plaintiff's attorney, he needed additional discovery to ensure that filing a claim for, among other things, common-law wrongful discharge was "justified by the facts."

On April 2, 2007, the federal court held a hearing concerning plaintiff's motion. During that hearing, the court confirmed that defendant's position was that it had fired plaintiff because he had cheated on the LEDS examination. The following colloquy then ensued between the court and plaintiff's counsel:

"THE COURT:   All right. Let's go next to the plaintiff's motion to extend the deadlines. In the light of [defense counsel's] commitment that there's only one issue in this case, I don't see any reason to extend it. This case should be tried as scheduled. Any problem with that, [plaintiff's counsel]? I'm not inclined to allow you—

"[PLAINTIFF'S COUNSEL]: If, in fact, two things turn out to be the case that we now are, my client and I, more strongly than ever are convinced they are, that, one,

the reason being asserted by the defendant is entirely untrue * * * for the termination; and, two, that the actual motive here was to keep [plaintiff] away from both criminal and civil claims involved by this woman, [the inmate] who alleges that she was sodomized in the jail, then under those conditions, *I want to bring another claim* and—

"THE COURT:   No, no. Wait a minute. No. I read your papers on that, your brief. I don't think that's your choice. *You can file another lawsuit if you want to, but it's clear that the only claim they made for firing * * * him was as set forth as we've discussed.*

"That's the issue. This case has been ready for closing of discovery, let me just look. We're not going to—and she knew about all these things before, or he did. So we're not going to go back and start over on this case.

"* * * * *

"THE COURT:   * * * And I don't know how long you've known about this other possibility, [plaintiff's counsel,] but we're not going to start this case all over for it.

*"So, we'll try this case on the pleadings that have been filed* and the motions for summary judgment that have been filed."

(Emphasis added.)

In sum, in denying plaintiff's motion to extend the discovery deadline, the federal court effectively refused to allow plaintiff to amend his complaint to allege a common-law wrongful discharge claim. The court then turned its attention to defendant's summary judgment motion. In that regard, as pertinent to the issues on appeal, defendant contended that plaintiff's defamation claim was barred under the doctrine of absolute privilege.

Then, on April 27, while the federal litigation was still pending and before the federal court ruled on the summary judgment motion, plaintiff filed this action in state court alleging claims for blacklisting, ORS 659.805,[2]

---

[2] ORS 659.805 provides:

"(1) No corporation, company or individual shall blacklist or publish, or cause to be blacklisted or published, any employee, mechanic or laborer discharged by such corporation, company or individual, with intent and for the purpose of preventing such employee, mechanic or laborer from engaging in or

and common-law wrongful discharge. Unlike his defamation claim in federal court—which concerned a statement that was made *before* his termination—the allegations comprising plaintiff's blacklisting claim concerned statements and conduct that occurred *after* his termination. Specifically, plaintiff alleged that "[o]n April 28, 2005"—the day that plaintiff was terminated—the sheriff

"and others acting at his direction falsely reported to the Department of State Police of the State of Oregon that plaintiff had been caught cheating on an examination for certification to access [LEDS], and arranged that this allegation be furnished to the Oregon Department of Public Safety Standards and Training in order to disqualify plaintiff from certification as a police officer or corrections officer in the State of Oregon."

Further, plaintiff alleged that,

"[f]rom April 28, 2005 through the present time [(i.e., April 27, 2007)], defendant has published and caused to be published; and has conspired or contrived by correspondence to communicate, false allegations of dishonesty and unfitness against plaintiff as an employee it has discharged, with the intent and for the purpose of preventing plaintiff from securing employment as a police officer or corrections officer in the State of Oregon. The said conduct of defendant is blacklisting within the meaning of ORS 659.805."

(Emphasis added.) Plaintiff sought (1) $100,000 in damages for "emotional distress, humiliation, and injury to his reputation" and (2) economic damages for lost wages, the amount of which plaintiff proposed to establish at the time of trial in the state action because they would continue to accrue over time.

Plaintiff's state court wrongful discharge claim was (and is) predicated on the same basic operative facts that he had described in his motion to extend the discovery deadline

---

securing similar or other employment from any other corporation, company or individual.

"(2) No officer or agent of any corporation or any other person shall, in any manner, conspire or contrive by correspondence or otherwise to prevent an employee discharged by such corporation or such person from securing employment."

in the federal district court. In general terms, plaintiff alleged the following facts:

After becoming aware that a deputy under his supervision had been flirting with female inmates, plaintiff had requested authorization from the sheriff to provide training to all deputies concerning appropriate conduct, but the sheriff had "rejected plaintiff's suggestion as unnecessary." Plaintiff later learned about an incident in which the subordinate deputy allegedly required a female inmate to engage in oral sex for contraband (*i.e.*, tobacco). When interviewed by plaintiff, the inmate had confirmed the incident. Plaintiff immediately notified the sheriff, who authorized him to conduct an official investigation.

Plaintiff had provided a written report of his investigation to the sheriff, recommending that "an outside agency be called in to conduct an investigation of possible criminal culpability." Thereafter, in the presence of the sheriff, plaintiff reported to defendant's insurance representative that "the incident had in fact occurred and was attributable in part to inadequate staff training and supervision." Following plaintiff's termination, the inmate who had been the victim of the purported misconduct commenced an action in federal district court in which she

> "alleged that [the sheriff] had failed to take any steps to deter [the deputy's] flirtatious behavior toward her, and that [the sheriff] had been reckless in failing to properly train and supervise [the deputy]. Defendant responded to the said lawsuit by denying that [the sheriff] was aware of any such behavior by [the deputy] or of any need for such training and supervision; and alleging that [the inmate] had failed to notify the county of any misconduct by [the deputy]."

Against the backdrop of those factual allegations, plaintiff, in his common-law wrongful discharge claim alleged that,

> "[a]t all material times, [he] had important societal duties to notify defendant of reports and observations of inappropriate flirtatious conduct by [the deputy] toward female prisoners; to seek to provide additional training and supervision for corrections officers; to promptly and

objectively investigate reports of criminal conduct toward a prisoner by a corrections officer; and to cooperate fully and candidly in investigations of such reports by outside agencies."

Plaintiff further alleged that his discharge was wrongful because "defendant terminated plaintiff's employment in retaliation for his having fulfilled the said duties and in order to conceal the facts regarding the defendant's civil liability for the conduct of [the deputy] toward [the female inmate]."

On May 7, 2007—approximately 10 days after plaintiff filed his complaint in state court—the federal court litigation was concluded. The federal court granted summary judgment in favor of defendant on all of plaintiff's claims—that is, the federal ADA claim and the state claims for unlawful employment practices and defamation. Specifically, with regard to the defamation claim, the court concluded that absolute privilege barred plaintiff from pursuing his claim. The court entered judgment accordingly.

Thereafter, defendant moved for summary judgment against both of plaintiff's claims in this case, asserting that the federal court's judgment precluded those claims. The parties' competing contentions as to the proper interplay between the federal court litigation and adjudication and the prosecution of the claims in this action were framed by reference to *Ram Technical Services, Inc. v. Koresko*, 215 Or App 449, 171 P3d 374 (2007), *adh'd to as clarified on recons*, 217 Or App 463, 177 P3d 10 (2008) (*Ram I*), *rev'd*, 346 Or 215, 208 P3d 950 (2009) (*Ram II*).[3]

Our analysis in *Ram I* was, in turn, implicitly informed by section 25 comment e of the *Restatement (Second) of Judgments* (1982), which recognizes that,

---

[3] For convenience, we refer collectively to our original decision and our decision on reconsideration as *Ram I*. Further, as the citation indicates, our decision in *Ram I* was subsequently reversed by the Supreme Court in *Ram II*. However, because the parties' contentions before the trial court and the trial court's summary judgment rulings were predicated on our decision in *Ram I*, we reserve our substantive discussion of *Ram II* until we discuss the parties' appellate contentions, which address the effect of the Supreme Court's decision on the issues in this case. *See* 253 Or App at 57-58.

"as a general rule, claim preclusion will bar a plaintiff who litigates a federal claim in federal court from relitigating state claims that the plaintiff could have but did not litigate in the federal action.[4] However, the *Restatement* also recognizes an exception to that general rule: If the federal court either clearly lacked jurisdiction over any pendent state law claims or, having jurisdiction, clearly would have declined to exercise its discretion to hear those state law claims, then claim preclusion does not bar litigating those claims."

*Ram II*, 346 Or at 220 (citations omitted).[5] In light of that construct, the parties' contentions before the trial court essentially reduced to a single issue—*viz.*, whether, in the circumstances of this case, the "general rule" controlled or the "exception" applied.

For its part, defendant contended that the general rule required preclusion because plaintiff's state and federal claims arose out of the same factual transaction and that plaintiff, through his state claims, was simply seeking to relitigate (1) the propriety of his termination by alleging a new reason that it was wrongful and (2) "the circumstances surrounding plaintiff's lack of veracity during the LEDS exam[ination] and defendant's related accusation." In sum, defendant, consistently with the general rule, asserted that plaintiff could have raised his claims in the federal action and, thus, was precluded from pursuing them now.

As particular support for that position, defendant relied on our then-recent decision in *Ram I* in which we had held that "broadened supplemental jurisdiction rules not only allow plaintiffs to litigate both state and federal issues at once in federal court, but they also compel plaintiffs to assert all of their transactionally related claims in a single

---

[4] In this context, a claim is understood to refer to "a group of facts which entitled plaintiff to relief." *Bloomfield v. Weakland*, 339 Or 504, 513, 123 P3d 275 (2005) (internal quotation marks omitted); *see also Restatement* § 24(1) ("When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar * * *, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."); *id.* § 24(2) (explaining that a "transaction" is a "factual grouping").

[5] The text of section 25 comment e of the *Restatement* is set out below, 253 Or App at 57.

federal forum—or risk losing them to claim preclusion."[6] 215 Or App at 461. Consistently with *Ram I*, defendant contended that plaintiff was compelled to assert all of his transactionally related claims in a single federal forum. Further, defendant asserted that, because plaintiff had failed to do so, his claims were precluded.

Plaintiff remonstrated that "the judgment in the Federal case d[id] not bar the claims alleged in this case." With regard to his blacklisting claim, plaintiff contended that claim preclusion was inapposite because that claim concerned a different factual transaction from the defamation claim adjudicated in federal court. That was so, according to plaintiff, because, unlike his defamation claim, the blacklisting claim involved communications that occurred *after* his termination.

Plaintiff's primary contention, however, was that claim preclusion was inapposite here because the federal district court had not permitted plaintiff to adjudicate his blacklisting and wrongful discharge claims in the federal action. Specifically, plaintiff explained that he had

"earnestly attempted to join [his claims for blacklisting and wrongful discharge] into his federal case, but was frustrated from doing so both by the objection of the defendant, and the refusal of [the federal court] to permit such joinder when it might delay discovery and final adjudication of the existing claims. Thus, the claims in this case could **not** have been litigated in the federal action prior to final judgment in that case; and the rule of preclusion simply does not apply."

(Boldface in original.)

Bluntly (at least in plaintiff's view): The "exception" to the *Restatement*'s "general rule" of preclusion applied because plaintiff had sought to amend his federal complaint

---

[6] We further, and alternatively, reasoned that, to the extent that the exception identified in the *Restatement*'s formulation had continued viability, "it [was] by no means 'clear' here that the federal court would have dismissed [the plaintiffs'] common-law fraud claim if it had been asserted in the federal action." *Ram I*, 215 Or App at 462. In essence, we reasoned that, because the plaintiffs had not attempted to assert their fraud claim in the federal action, they had not demonstrated that the federal court clearly would have declined to exercise supplemental jurisdiction over it.

to include his blacklisting and wrongful discharge claims and the federal court had clearly declined to allow him to do so.

The trial court granted defendant's motion as to plaintiff's blacklisting claim but denied it as to the wrongful discharge claim. The trial court concluded that claim preclusion barred plaintiff's blacklisting claim because it was "related to the same factual transaction as the [federal] suit and is of such a nature that it could have been joined in it." In particular, the court noted that "[t]he crux of plaintiff's blacklisting claim is the same as his defamation claim"— *viz.*, the publication of false allegations with the intent to interfere with plaintiff's ability to obtain employment as a law enforcement officer following his discharge. Further, citing our decision in *Ram I*, the court noted that, although the blacklisting claim could have been filed in the federal case, "[p]laintiff never made any attempts to pursue the claim in his first suit." Accordingly, the trial court granted defendant's summary judgment motion as to that claim.

The court, however, came to a different conclusion with regard to the wrongful discharge claim. Specifically, the court identified two reasons that claim preclusion did not bar that claim. First, the court explained that the wrongful discharge claim "[was] not based upon the same factual transactions at issue in the Federal Court case. Both cases involved alleged wrongful dismissal, but they rely upon very different facts."

Second, and alternatively, the court explained that the wrongful discharge claim "could not have been joined in the first action since [the federal district court] effectively did not allow it to be joined." Specifically, the trial court explained that the "main focus [of the federal district court] was to keep the Federal Court case progressing to trial" and that, consistently with *Ram I*, plaintiff had effectively attempted to pursue his wrongful discharge claim in federal court when he sought to extend the discovery deadline. In sum, the court reasoned that, "[a]lthough plaintiff never actually moved to join the claim in the federal suit, it is clear that an attempt to do so would have been futile." Accordingly, the trial court denied defendant's summary judgment motion as to the wrongful discharge claim.

Defendant subsequently moved for judgment on the pleadings under ORCP 21 B as to plaintiff's wrongful discharge claim. In support of that motion, defendant relied principally on the Supreme Court's decision in *Lamson v. Crater Lake Motors, Inc.*, 346 Or 628, 216 P3d 852 (2009), and particularly on the court's statement that,

> *"even if* a 'public duty' wrongful discharge claim theoretically could arise in the absence of a law imposing a specific legal obligation to perform the act or acts that trigger the discharge, the sources of law that express the asserted 'public policy' must in *some* sense speak directly to those acts."

*Id.* at 638 (emphasis in original). In light of that reasoning, defendant contended that plaintiff's complaint failed to identify "a sufficient basis in law, either by statute, constitutional provision, or existing case law, for his allegedly important societal [duty]."

Plaintiff remonstrated that various statutes demonstrated that a sheriff is responsible for enforcing the criminal law and that, as a deputy, he has a derivative duty. Specifically, plaintiff explained that his duty to respond as he did to "knowledge that a deputy under his supervision had engaged in criminal sexual activity and bribe-taking with a female prisoner" derived "from the Sheriff's **own** duties" (boldface in original) under ORS 206.010(1) to "[a]rrest and commit to prison all persons who break the peace * * * and all persons guilty of public offenses." *See also* ORS 169.320(1) (providing generally, that a sheriff "has custody and control of all persons legally committed or confined in the county local correctional facility of the county of the sheriff during the period of the commitment or confinement"). Relying on ORS 204.635(3), which provides that "[a] deputy has the power to perform any act or duty that the principal has," plaintiff posited that he "had the same duties as the Sheriff himself to procure the arrest and punishment of [the deputy]; and to secure the custody of Lake County's prisoners and control of its jail." In sum, plaintiff noted that, if an important public duty did not exist under those circumstances, "a law enforcement officer c[ould] be fired without recourse for assisting in the investigation and prosecution of a criminal, if that criminal's employment or conduct might embarrass the sheriff."

The trial court, without amplification, granted defendant's motion for judgment on the pleadings as to the wrongful discharge claim. Given its dismissal of both of plaintiff's claims, the court then entered judgment for defendant. Plaintiff appeals.

On appeal, plaintiff assigns error both to the trial court's allowance of summary judgment against his blacklisting claim and to the allowance of judgment on the pleadings against his wrongful discharge claim. Conversely, defendant cross-assigns error to the court's denial of summary judgment as to plaintiff's wrongful discharge claim. The parties essentially reiterate the contentions that they raised before the trial court.

As amplified below, we conclude that claim preclusion did not bar either of plaintiff's claims—and, thus, the trial court erred in allowing summary judgment as to the blacklisting claim but properly denied it as to the wrongful discharge claim. We further conclude that, because plaintiff alleged circumstances sufficient to establish that he was terminated for fulfilling an important public duty, the trial court erred in allowing judgment on the pleadings as to the wrongful discharge claim.

Because they both pertain to the proper application of claim preclusion principles, we turn first to plaintiff's assignment of error and defendant's cross-assignment of error concerning the trial court's summary judgment rulings. Before addressing the parties' specific contentions, however, we begin by determining whether state or federal law governs the resolution of that legal issue.

"The general rule is that the preclusive effect to be given to a judgment is determined by the law of the jurisdiction in which the judgment was rendered." *Aguirre v. Albertson's, Inc.*, 201 Or App 31, 46, 117 P3d 1012 (2005). Thus, "state courts generally are bound by federal law in determining the preclusive effect of federal court judgments."[7] *Id.*

---

[7] *Cf. Cornus Corp. v. GEAC Enterprise Solutions, Inc.*, 252 Or App 595, 606-07, 289 P3d 267 (2012) (noting a "distinction between the preclusive effect of a federal judgment in a federal question case and a federal judgment in [a] diversity case"; explaining that "[f]ederal courts have a significant interest in applying a uniform

Nevertheless, as we noted in *Aguirre*, "[a]s a practical matter, * * * preclusion principles 'as expounded in state and federal courts' often reflect few or no differences, so that it is 'usually a moot question whether the effect of a federal judgment is determined by federal law or state law.'" 201 Or App at 46 (quoting *Restatement* § 87 comment a). That appears to be the case here. Consequently, "in an exercise of caution," we cite both Oregon and federal authorities in our discussion of claim preclusion principles.[8] *Id.* at 46 n 17; *see also Ram I*, 215 Or App at 456-57 (applying that approach).

Here, we begin with plaintiff's blacklisting claim. Plaintiff contends that claim preclusion principles did not bar the prosecution of that claim because it concerned a different factual transaction from the defamation claim adjudicated in federal court. Plaintiff explains that, unlike the defamation claim—which concerned a statement "made *before* [his] termination and for the purpose of justifying that termination" (boldface omitted; emphasis added)—his blacklisting claim concerned statements and conduct that occurred *after* his termination. As amplified below, we agree with plaintiff.[9]

"As a rule, * * * a subsequent claim is barred by a prior judgment if the earlier litigation proceeded to final judgment, involved the same parties, and concerned a claim arising out of the same transaction or series of related transactions." *Aguirre*, 201 Or App at 47 (citing *Headwaters, Inc. v. U. S. Forest Service*, 399 F3d 1047, 1051-57 (9th Cir 2005); *Drews v. EBI Companies*, 310 Or 134, 140-41, 795 P2d 531 (1990)). As we explained in *Aguirre*,

---

federal claim-preclusion rule to judgments that involve federal substantive law, but only a limited interest when it comes to diversity judgments").

[8] Further, although we are not bound by decisions of the Ninth Circuit, we cite its precedent whenever possible because the federal judgment in this case was rendered by a federal district court in Oregon that lies within that circuit. *See Aguirre*, 201 Or App at 47 n 18 (applying that approach).

[9] Plaintiff also notes that, in *Ram II*, the Supreme Court reversed our decision in *Ram I*. According to plaintiff, under the Supreme Court's reasoning, his blacklisting claim is not precluded. However, in light of our conclusion that plaintiff's blacklisting claim concerns a factual transaction different from the one litigated in federal court, we need not address plaintiff's contention concerning the implications, if any, of *Ram II* with respect to the proper disposition of that claim.

"[u]nder that expansive 'transactional approach,' which is endorsed by federal and Oregon precedents alike, claim preclusion bars not only claims that have actually been litigated, but any claim arising out of the same transaction or series of connected transactions. *See Costantini v. Trans World Airlines*, 681 F2d 1199, 1201-02 (9th Cir), *cert den*, 459 US 1087 (1982) (claim preclusion applies to claims arising from the 'same transactional nucleus of facts'); *Drews*[, 310 Or at 140-42] (tracing development of claim preclusion principle and affirming Oregon's endorsement of transactional approach)."

201 Or App at 47 (footnote omitted).

In determining whether a set of facts constitutes a single transaction, we and the Ninth Circuit rely on the approach expressed in section 24(2) of the *Restatement*, which "giv[es] weight to such considerations as whether the facts are related in time, space, origin, or motivation [and] whether they form a convenient trial unit[.]" *See Western Systems, Inc. v. Ulloa*, 958 F2d 864, 871 (9th Cir 1992), *cert den*, 506 US 1050 (1993) (applying that approach); *Handam v. Wilsonville Holiday Partners, LLC*, 221 Or App 493, 498, 190 P3d 480 (2008) (same).

Applying those principles to the circumstances here, we conclude that plaintiff's blacklisting claim did not arise out of the same transaction as did his defamation claim in federal court. In general terms, the factual transaction at issue in the federal action involved the circumstances surrounding plaintiff's termination. In that context, the defamation claim concerned a single false statement—*viz.*, that plaintiff had cheated on his LEDS exam and encouraged another employee to do so as well—made by one of defendant's employees to create, as plaintiff theorized, a pretextual justification for plaintiff's subsequent termination. Further, although plaintiff alleged that defendant defamed him to interfere with his ability to obtain employment, plaintiff sought damages only for emotional distress and the harm caused to his reputation.

As did plaintiff's defamation claim, the subject matter of plaintiff's blacklisting claim concerns communications about plaintiff's dishonesty and unfitness. Nevertheless,

plaintiff's blacklisting claim concerns a different factual transaction. That is so for at least two reasons.

First, plaintiff's blacklisting claim involved communications that occurred over a substantial period of time after his termination that are distinct from the single communication that was the subject of his defamation claim and that the federal court concluded was privileged. Thus, the facts concerning the circumstances surrounding those later communications, including when and between whom they were made, will be different from those adjudicated as part of plaintiff's defamation claim.

Second, the gravamen of plaintiff's federal action was that his termination was wrongful. In that context, plaintiff's defamation claim—which was predicated on defendant's allegedly false statement that plaintiff had cheated on his LEDS examination—functioned as a vehicle for plaintiff to establish that defendant's purported reason for terminating him was pretextual. By contrast, his blacklisting claim alleges that defendant's subsequent communications were motivated by a different purpose—*viz.*, to "disqualify plaintiff from certification as a police officer or corrections officer in the State of Oregon" and to "prevent[ ] plaintiff from securing employment as a police officer or corrections officer in the State of Oregon." The factual bases underlying those distinct motivations will themselves be distinct.

Under such circumstances, we conclude that plaintiff's blacklisting claim was not part of the same factual transaction that had been litigated in federal court. Accordingly, the trial court erred in allowing summary judgment as to plaintiff's blacklisting claim.[10]

Before turning to plaintiff's remaining assignment of error, we address defendant's cross-assignment of error, which concerns the propriety of the court's denial of its motion for summary judgment, on preclusion grounds, as

_____

[10] Having reversed the trial court's summary judgment ruling as to the blacklisting claim, we note that plaintiff has requested that we proceed to determine whether ORS 659.805—the statute on which his blacklisting claim is predicated—establishes a private cause of action for damages. That issue was not raised to the trial court. Accordingly, we do not address it here.

to plaintiff's wrongful discharge claim. Initially, plaintiff contends that that cross-assignment of error is unreviewable. Plaintiff, however, is incorrect in that regard.

In *St. Paul Fire & Marine Ins. v. Speerstra*, 63 Or App 533, 535, 666 P2d 255, *rev den*, 295 Or 773 (1983), the defendants moved for summary judgment against the plaintiffs' claim on statute of limitations grounds. The trial court denied that motion. *Id.* Thereafter, the plaintiffs twice amended their pleadings, and each time the defendants moved to dismiss. *Id.* at 535-36. The court granted the defendants' motions. The plaintiffs appealed, assigning error to the allowance of the motions to dismiss, and the defendants cross-assigned error to the trial court's denial of their summary judgment motion concerning the plaintiffs' original complaint. As to the reviewability of the defendants' cross-assignment of error, we held:

> "The denial of a motion for summary judgment is not an appealable order. Under some circumstances, however, a denial may be reviewable. Final judgment was eventually entered in defendants' favor here, and they therefore had no reason or means to assert the denial of their summary judgment motion as error. A trial was never held, and so a motion for a directed verdict on the grounds now urged by defendants was precluded. Thus, because of the peculiar procedural posture of this case, we will review this alleged error."

*St. Paul Fire & Marine Ins.*, 63 Or App at 536 (citations omitted).

This case is in the same procedural posture as *St. Paul Fire & Marine Ins.* Thus, under the reasoning in that case, defendant's cross-assignment of error is reviewable. *See also Stilwell v. Seibel*, 169 Or App 613, 10 P3d 319 (2000) (reviewing cross-assignment of error concerning the denial of summary judgment where the case was in the same procedural posture as *St. Paul Fire & Marine Ins.*). Accordingly, we proceed to address the merits of that cross-assignment.

Defendant contends that the trial court erred in concluding that plaintiff's wrongful termination claim was not barred by claim preclusion:

"The state and federal employment claims that plaintiff brought in federal court arose from the same transaction as his wrongful termination claim—the circumstances surrounding defendant's termination of plaintiff's employment. The wrongful termination claim is simply an alternative theory for why he was fired, and the *Restatement* rule on claim preclusion, which has been adopted in Oregon, provides that the doctrine covers this situation.

"Moreover, plaintiff knew of all the relevant facts concerning this claim before he filed the federal action. Any facts of which he was not aware are of questionable relevancy and were easily discoverable. Plaintiff's own failure to investigate his claim should not be a sufficient reason to allow him to bring a second lawsuit regarding the same employment decision."

Further, defendant contends that the exception to preclusion that the Supreme Court referred to in *Ram II* does not apply under the circumstances of this case. As previously noted, 253 Or App at 47-50, when the parties litigated defendant's summary judgment motion in the trial court, they—as did the trial court—relied on our then-recent decision in *Ram I*. Thereafter, however, in *Ram II*, the Supreme Court reversed our decision in *Ram I*. 346 Or 215.

In *Ram II*, the Supreme Court held that *Restatement* section 25 comment e applies in determining whether a federal judgment precludes claims raised in a subsequent state court action. 346 Or at 226. Specifically, that comment provides:

"A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. *If, however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.*"

(Emphasis added.) The Supreme Court explained that that provision of the *Restatement* recognized that, "as a general rule, claim preclusion will bar a plaintiff who litigates a federal claim in federal court from relitigating state claims that the plaintiff could have but did not litigate in the federal action." *Ram II*, 346 Or at 220. However, as the Supreme Court noted, the *Restatement* also recognizes an exception to that general rule.

The Supreme Court concluded that we had erred in *Ram I* in concluding that the congressional expansion of a federal court's supplemental jurisdiction had effectively superseded the exception identified in the *Restatement* and required a plaintiff to assert all transactionally related claims in the federal forum. *Ram II*, 346 Or at 220-21, 226. The court explained that, "[t]o be sure, the rule that the Court of Appeals adopted * * * avoids having state courts decide, in retrospect, how a federal court would have exercised its discretion if a plaintiff had sought to litigate his or her state claims under the doctrine of supplemental jurisdiction." *Id.* at 227. However, the Supreme Court posited that "state courts are fully capable of making that determination." *Id.* In sum, the Supreme Court held:

> "[T]he exception to claim preclusion applies only when a federal court, having jurisdiction, clearly would have declined to exercise it. If it is not clear that the federal court, having jurisdiction, would have declined to exercise it, then claim preclusion will bar any state law claim that a plaintiff could have but did not raise initially in federal court."

*Id.*

In light of the Supreme Court's holding in *Ram II*, defendant now contends that plaintiff did not establish that the federal court clearly would have declined to exercise supplemental jurisdiction over his wrongful discharge claim. Instead, defendant asserts that "[h]ad plaintiff filed a timely motion to amend, the [federal] court undoubtedly would have granted it given the legal standard that governs such motions, and it would have exercised supplemental jurisdiction over plaintiff's [wrongful discharge] claim."

For that reason, defendant posits that the exception to preclusion is inapplicable here.

For purposes of our analysis, we assume without deciding that (as defendant posits) plaintiff's wrongful discharge claim arose from the same factual transaction that was adjudicated in his federal action. We indulge in that assumption because, in all events and for the reasons that we explain, the exception to preclusion applies as a matter of law.

Here, plaintiff's motion to extend the discovery deadline in federal court and his colloquy with the federal court during the ensuing hearing alerted the court that plaintiff was seeking additional time for discovery so as to verify the facts necessary to amend his complaint to add the common-law wrongful discharge claim at issue in this appeal. *See* 253 Or App at 43-44 (setting out colloquy). Thus, plaintiff essentially sought to amend his federal complaint to add a claim for common-law wrongful discharge, and the court refused to allow him to do so. The federal court's intent in that regard is patent from its statements that plaintiff could "file another lawsuit if [he] want[ed] to" and its directive, "[W]e'll try this case on the pleadings that have been filed \* \* \*." Under those circumstances, the federal court, having jurisdiction, "clearly" declined to exercise supplemental jurisdiction over plaintiff's wrongful discharge claim. Accordingly, the exception to preclusion identified in *Ram II* applies, and the trial court properly denied summary judgment, on preclusion grounds, as to plaintiff's wrongful discharge claim.

Having determined that plaintiff's wrongful discharge claim was not subject to dismissal on claim preclusion grounds, we turn finally to plaintiff's remaining assignment of error in which he contends that the trial court erred in allowing judgment on the pleadings against that claim on the ground that he had failed to allege that his termination contravened an "important public duty." On appeal, as before the trial court, plaintiff contends that, among other things, enforcing the criminal laws—which encompasses the prevention and detection of crime—is an important public duty, and that, just as the sheriff

was obligated to fulfill that duty, so too was he (plaintiff) required to undertake and promote the enforcement of the criminal laws, including with respect to conduct involving jail inmates.[11] Plaintiff further contends that, because his termination contravened that duty, his termination was wrongful. Whether plaintiff identified an important public duty is a question of law. *Huber v. Dept. of Education*, 235 Or App 230, 242, 230 P3d 937 (2010).

In determining whether an important public duty exists, we recently explained:

> "'This court cannot create a public duty but must find one in constitutional or statutory provisions or case law.' *Eusterman v. Northwest Permanente, P.C.*, 204 Or App 224, 229-30, 129 P3d 213, *rev den*, 341 Or 579 (2006). 'To establish a duty, statutes cannot merely express a general public policy; rather, they must encourage specific acts or "otherwise demonstrat[e] that such acts enjoy high social value."' *Id.* at 230 (quoting *Babick* [*v. Oregon Arena Corp.*], 333 Or [401,] 409[, 40 P3d 1059 (2002)]; brackets in original). A plaintiff can demonstrate that an important public duty exists through statutes or rules that 'specifically encourage or require a particular action.' *Love v. Polk County Fire District*, 209 Or App 474, 486, 149 P3d 199 (2006)."

*Huber*, 235 Or App at 242. Further, we indicated that in *Lamson*—the case on which defendant's motion for judgment on the pleadings had been predicated—the Supreme Court had

> "explained that, for purposes of a common-law wrongful discharge claim, an important public duty could theoretically arise 'in the absence of a specific legal obligation to perform the act or acts that trigger the discharge, [but] the sources of law that express the asserted "public policy" must in *some* sense speak directly to those acts.'"

---

[11] As previously noted, 253 Or App at 46-47, plaintiff specifically alleged that he had been terminated for fulfilling important public duties

> "to notify defendant of reports and observations of inappropriate flirtatious conduct by [the deputy] toward female prisoners; to seek to provide additional training and supervision for corrections officers; to promptly and objectively investigate reports of criminal conduct toward a prisoner by a corrections officer; and to cooperate fully and candidly in investigations of such reports by outside agencies."

*Huber*, 235 Or App at 243 (quoting *Lamson*, 346 Or at 637-38) (brackets in *Huber*; emphasis in *Lamson*).

We begin by noting that plaintiff's duties derive from the sheriff's. *See* ORS 204.635(3) (providing, in part, that "[a] deputy has the power to perform any act or duty that the principal has"). For that reason, we begin by describing the duties of a sheriff.

A "sheriff is the chief executive officer and conservator of the peace of the county." ORS 206.010. "In the execution of the office of sheriff, it is the sheriff's duty to[,]" among other things, "[a]rrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses." ORS 206.010(1). In general, a sheriff also "has custody and control of all persons legally committed or confined in the county local correctional facility of the county of the sheriff during the period of the commitment or confinement." ORS 169.320(1).

A sheriff must be certified as a "police officer" by the Department of Public Safety Standards and Training.[12] The term "police officer" is defined for those purposes in ORS 181.610(15), which provides, in part:

"'Police officer' means:

"(a) An officer, member or employee of a law enforcement[13] unit employed full-time as a peace officer who is:

---

[12] *See* ORS 206.015(1)(c) (providing that a "person is not eligible to be a candidate for election or appointment to the office of sheriff" unless, among other things, "[t]he person has not been convicted of a felony or of any other crime that would prevent the person from being certified as a police officer under ORS 181.610 to 181.712"); ORS 206.015(3) ("If the person is not certified as a police officer by the Department of Public Safety Standards and Training at the time of accepting appointment or filing as a candidate, a person elected or appointed to the office of sheriff must obtain the certification not later than one year after taking office. A copy of the certification shall be filed with the county clerk or the county official in charge of elections. The county governing body shall declare the office of sheriff vacant when the person serving as sheriff is not certified as a police officer within one year after taking office.").

[13] Relatedly, the term "law enforcement unit" is defined in ORS 181.610(12). That statute provides, in part:

"'Law enforcement unit' means:

"(a) A police force or organization of *** a *** county *** the primary duty of which, as prescribed by law, ordinance or directive, is one or more of the following:

"(A) Commissioned by a * * * county * * *; and

"(B) Responsible for enforcing the criminal laws of this state * * *[.]"

*See also State v. Kurtz*, 350 Or 65, 72, 249 P3d 1271 (2011) (explaining that, consistently with the plain meaning of the term, a "police officer" is "'a member of a police force'" that is "'entrusted by government with the maintenance of public peace and order, the enforcement of laws, and the prevention and detection of crime'" (quoting *Webster's Third New Int'l Dictionary* 1754 (unabridged ed 2002))).

Those statutes express an important public policy—*viz.*, that a sheriff has a public duty to enforce the criminal laws, which includes the prevention and detection of crime.[14] Pursuant to ORS 204.635(3), plaintiff has the same duties. Thus, to the extent that plaintiff alleged that he was terminated for seeking to enforce the criminal laws by preventing, detecting, and investigating crime, he has adequately alleged that his termination contravened an important public duty. *See Lamson*, 346 Or at 638 (holding, in part, that the "sources of law that express the asserted 'public policy' must in *some* sense speak directly to" the acts that trigger the discharge (emphasis in original)).

Here, accepting the truth of plaintiff's allegations,[15] during plaintiff's employment, he sought to provide training

---

"(A) Detecting crime and enforcing the criminal laws of this state or laws or ordinances relating to airport security;

"(B) The custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined to a place of incarceration or detention other than a place used exclusively for incarceration or detention of juveniles[.]"

[14] We note that this case is readily distinguishable from *Babick*, 333 Or 401, a case in which the Supreme Court held that private security personnel had not stated claims for common-law wrongful discharge. In that case, the court concluded that statutes evincing a public policy against crime and in favor of safe communities did not impose or suggest that private security personnel have a public duty to take law enforcement actions against those who break the law. *Id.* at 409-10. Specifically, the court noted that the statutes did not "impose an affirmative duty on private security personnel to arrest lawbreakers." *Id.* at 410. Here, by contrast, the pertinent statutes impose on sheriffs, as well as their deputies, an obligation to, among other things, investigate crime and enforce the criminal laws.

[15] *See Boyer v. Salomon Smith Barney*, 344 Or 583, 586, 188 P3d 233 (2008) ("On review of a judgment on the pleadings, an appellate court accepts as true all well-pleaded allegations of the complaint.").

to all deputies so as to prevent inappropriate contact with female inmates, but the sheriff rejected that request. Moreover, when he learned that a deputy under his supervision had allegedly exchanged contraband for oral sex with a female inmate, he investigated that alleged criminal conduct.[16] Ultimately, plaintiff concluded that that incident involving the inmate occurred and was attributable to inadequate training and supervision and shared those conclusions, in the presence of the sheriff, with defendant's insurance representative. Because plaintiff alleged that he was terminated for that conduct, he has adequately pleaded that his termination was in contravention of an important public policy. Accordingly, the trial court erred in allowing defendant's motion for judgment on the pleadings as to plaintiff's wrongful discharge claim.

Reversed and remanded.

---

[16] *See, e.g.*, ORS 162.185(1)(a) (providing that "[a] person commits the crime of supplying contraband if" that person "knowingly introduces any contraband into a correctional facility"); ORS 162.415(1)(b) (providing that a public servant commits the crime of first-degree official misconduct "if with intent to obtain a benefit or to harm another * * * [t]he public servant knowingly performs an act constituting an unauthorized exercise in official duties").