Charles KRISOR,
*Plaintiff-Appellant,*

*v.*

LAKE COUNTY FAIR BOARD,
a political subdivision of the State of Oregon,
*Defendant-Respondent.*

Lake County Circuit Court
100079CV; A149432

302 P3d 455

Michael W. Franell argued the cause and filed the briefs for appellant.

Robert E. Franz, Jr., argued the cause for respondent. With him on the brief was Elizabeth S. Moseley.

Before Schuman, Presiding Judge, and Hadlock, Judge, and You, Judge pro tempore.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Plaintiff brought this action against the Lake County Fair Board (the board), alleging that the board rejected his job application in retaliation for his previously having complained that the board engaged in unlawful hiring practices—hiring a business partner of a board member and a relative of another board member. Plaintiff also, in a separate action, sued the board, alleging that the board's hiring practices violated statutes prohibiting conflicts of interest and that those hiring decisions were made at a meeting that did not conform to statutory notice requirements. *See Krisor v. Henry*, 256 Or App 56, 300 P3d 199 (2013) (*Krisor I*). That earlier suit was dismissed as untimely; plaintiff appealed, and we dismissed the appeal as moot. *Id*. In this retaliation case, the trial court granted the board's motion for summary judgment on the ground that plaintiff's claim was precluded by the final judgment in *Krisor I*. Plaintiff now appeals, and we reverse and remand.

The facts are procedural and undisputed.

"In July 2008, a Lake County local newspaper published an advertisement notifying readers that the Lake County Fair Board was seeking a full-time maintenance technician for a position at the fairgrounds. Plaintiff applied for the position, but he was not one of the finalists who was chosen for an interview. Instead, the board hired Haffner. * * * Plaintiff learned of Haffner's appointment on August 1, 2008."

*Krisor I*, 256 Or App at 57 (footnote omitted). Plaintiff complained to members that the board's hiring of Haffner and another individual violated state conflict of interest provisions, and plaintiff threatened to file a lawsuit against the board. Shortly thereafter, Haffner's employment with the board ended and, in December 2008, the board began a search for a replacement. Plaintiff's application was reactivated, but on March 9, 2009, the board hired a different candidate.

Two lawsuits ensued. In July 2009, plaintiff filed a *pro se* complaint in *Krisor I* against the individual members of the board, alleging discrimination and "nepotism" and seeking $25,000,000 in damages. An amended *pro se* complaint followed in October of that year, naming the board

members "in their official and individual capacities," alleging "nepotism in violation of ORS 244.177," negligence, and breach of fiduciary duty, and seeking damages "in an amount to be determined at trial."

In March 2010, before any hearing in *Krisor I*, plaintiff—now represented by counsel—filed the first and only complaint in this action, hereafter *Krisor II*, naming the board as defendant and alleging that the board discriminated against him based on his complaint of illegal hiring in 2008, contrary to ORS 659A.030(1)(f), and seeking damages of $1,370,000.[1] Finally, in April 2010, after filing *Krisor II*, plaintiff's counsel filed a third amended (and final) complaint in *Krisor I*, still naming the board members in their individual and official capacities, asserting a claim based on a violation of the public meetings law and seeking a judgment declaring that the decision to hire Haffner was void. The trial court ultimately granted the board's motion for summary judgment in *Krisor I* on the ground that plaintiff did not file his complaint within the applicable statute of limitations. We dismissed the appeal on the alternative ground that the complaint was moot because Haffner was no longer working for the board so the court had nothing to void. *Krisor I*, 256 Or App at 59.

Meanwhile, some five months after the trial court decided *Krisor I*, it took up this case and ultimately ruled in favor of the board on the ground that this discrimination-by-retaliation claim was precluded by the final judgment in the public meetings case. Plaintiff appeals.

As the Supreme Court has explained, "claim preclusion" as that term is typically used, formerly known as *res judicata*, prohibits a party from relitigating a cause of action against the same defendant involving the same factual transaction as was litigated in the previous adjudication, if there has been a final judgment in the first action. *Drews v. EBI Companies*, 310 Or 134, 139-40, 795 P2d 531 (1990); *Shuler v. Distribution Trucking Co.*, 164 Or App 615, 621,

---

[1] ORS 659A.030(1)(f) provides that it is an unlawful employment practice "[f]or any person to * * * discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint * * * in any proceeding under this chapter or has attempted to do so."

994 P2d 167 (1999), *rev den*, 330 Or 375 (2000).[2] The doctrine bars not only claims that were raised in the first action, but claims that could have been raised there. *Drews*, 310 Or at 140; *State ex rel English v. Multnomah County*, 348 Or 417, 431-32, 238 P3d 980 (2010). Plaintiff argues that claim preclusion does not apply here for two reasons: First, defendant in this case (the board) is not the same as the defendants in the first case (board members "in their official and individual capacities," including one person who is no longer on the board); and second, the two cases are not based on "the same factual transaction."

We disagree with plaintiff's first contention. Although plaintiff's original *pro se* complaint named individual members of the board as defendants, the operative complaint named them "in their official and individual capacities." That complaint contained several allegations of conflict of interest directed toward individual members, one of whom was no longer a member of the board when *Krisor II* was filed. However, those allegations were extraneous to the actual *claim* contained in the complaint: that defendants participated in "decisions made by a public body in violation of the provisions of ORS 192.610 to 192.680." The referenced statutes all deal with public meetings; they do not deal with conflicts of interest. Further, the only relief that plaintiff sought in *Krisor I* was the injunctive remedy provided for in ORS 192.680(1): a declaration that the appointment made by the board at the allegedly unlawful meeting be declared void. Thus, to the extent that the complaint in *Krisor I* carried a caption naming individual board members, the only operative part of the complaint was directed toward the board *qua* board. Plaintiff essentially conceded this conclusion when, in response to a show cause order from the Appellate Commissioner, he stated that "the complaint alleges the defendants violated ORS 192.640 by holding a public meeting that was not properly noticed. This is an

---

[2] We say as "typically used" because the rule of claim preclusion actually encompasses two rules: bar and merger. The rule of bar, at issue in this case, "is the principle most often described by the term 'claim preclusion.' That rule prohibits parties from splitting claims by requiring plaintiffs to 'bring all claims arising from the same factual transaction or circumstances in a single action.' *Peterson v. Temple*, 323 Or 322, 327, 918 P2d 413 (1996)." *State ex rel English v. Multnomah County*, 348 Or 417, 432, 238 P3d 980 (2010).

act that they can only take as a public body." Thereafter, the case caption named defendants as "Ed Henry, Junior Gabriel, Winsome Wells, George Jaska, and Ken Kestner *in their official capacity as Lake County Fair Board members.*" (Emphasis added.) Under ORCP 34 F(1), "[w]hen a public officer is a party to an action in such officer's official capacity and during its pendency dies, resigns, or otherwise ceases to hold public office, the action does not abate and such officer's successor is automatically substituted as a party."

Plaintiff argues that some of the *Krisor I* defendants retain their "individual capacity" status, and therefore defeat a claim preclusion judgment, because they were potentially liable as individuals under ORS 192.680(4):

"If the court makes a finding that a violation of ORS 192.610 to 192.690 has occurred * * * and that the violation is the result of willful misconduct by any member or members of the governing body, that member or members shall be jointly and severally liable to the governing body or the public body of which it is a part for the amount paid by the body under subsection (3) of this section [permitting an award of attorney fees to some prevailing challengers]."

That provision, however, has no bearing on the named individuals' status as defendants in *Krisor I*; it would make them defendants in an action that the board might (or might not) have chosen to file against them had the board been found to have acted unlawfully. In sum, we conclude that the defendant in *Krisor I* and *Krisor II* is the same entity: the Lake County Fair Board.

That conclusion brings us to the question of whether the two claims could have been brought in the same action. Treatment of that question has evolved over the years. Before the Supreme Court decision in *Dean v. Exotic Veneers, Inc.*, 271 Or 188, 196, 531 P2d 266 (1975), the court applied a version of the so-called "same evidence" test. Under that test, "if the evidence needed to sustain two proceedings is different, those proceedings do not involve the same cause of action," and the two proceedings could be brought separately. *Id.* The court in *Dean* rejected the same evidence test, noting:

"As permissible joinder of requests for various forms of relief and amendments during trial become broader and more liberal, the reasons behind [claim preclusion, formerly known as] res judicata dictate that parties to actions be required to make use of such liberal procedures and not be permitted to protract litigation through a *multiplicity of suits or actions* which can be disposed of in one proceeding. *See Clark on Code Pleading* 472-78 (2d ed 1947); *see also, Jarvy v. Mowrey*, 235 Or 579, 583, 385 P2d 336 (1963). Therefore, with the advent of code pleading and the abandonment of rigid common law forms, the definition of 'cause of action' has tended to expand."

*Id.* at 192-93. In place of the same evidence test, the court applied what has come to be called the "transactional" approach, in which claims cannot be split if they are based on "an aggregate of operative facts giving rise to a right or rights." *Id.* at 193 (quoting *Clark on Code Pleading*, 127 (2d ed 1947)). An alternate formulation holds that two claims cannot be split if they both arise from the same factual transaction or "connected series of transactions." *Rennie v. Freeway Transport*, 294 Or 319, 324, 656 P2d 919 (1982) (quoting *Restatement (Second) of Judgments* § 25 comment f (1982)). The Supreme Court has noted that "[t]he two descriptions of what is a [single, unsplittable] claim are not far apart because any transaction is proved as an aggregate of facts showing it and its nature." *Peterson*, 323 Or at 331 (quoting *Drews*, 310 Or at 141 n 5). Whether claim preclusion applies in any situation is a fact-intensive question.

The facts in the present case lead us to conclude that this retaliation case was not precluded by *Krisor I*. *Lucas v. Lake County*, 253 Or App 39, 289 P3d 320 (2012), provides persuasive guidance. In that case—the convoluted facts of which we simplify in order to focus on those aspects relevant to our analysis here—the plaintiff, a deputy sheriff sergeant, told the defendant's insurance representative that there had been incidents of sexual harassment and that they were the result of the defendant's inadequate training. *Id.* at 41, 46. The plaintiff's superior, the sheriff, was present when the plaintiff made that statement to the insurance representative. *Id.* Shortly thereafter, "defendant's Law

Enforcement Data System (LEDS) representative sent an e-mail to the state-wide LEDS Training and Education Manager falsely indicating that 'plaintiff had cheated on an examination required for access to [LEDS].'" *Id.* at 42. The next day, the defendant terminated the plaintiff. *Id.* Those two actions—the alleged defamation and the allegedly retaliatory termination—were subsequently encompassed in claims that the plaintiff made in federal court. *Id.* at 41-43.

The same day that the defendant terminated the plaintiff, the defendant allegedly "blacklisted" him, contrary to ORS 659.805, by

"falsely report[ing] to the Department of State Police of the State of Oregon that plaintiff had been caught cheating on an examination for certification to access [LEDS], and arranged that this allegation be furnished to the Oregon Department of Public Safety Standards and Training in order to disqualify plaintiff from certification as a police officer or corrections officer in the State of Oregon."

*Id.* at 45 (second bracket in original). This allegation of "blacklisting," along with another claim that is not relevant here, was then encompassed in a *state* court action by the plaintiff. *Id.* at 44-45. "Unlike his defamation claim in federal court—which concerned a statement that was made *before* his termination—the allegations comprising plaintiff's black-listing claim concerned statements and conduct that occurred *after* his termination." *Id.* at 45 (emphasis in original).

Next, the federal court granted summary judgment to the defendant on all of the plaintiff's claims. *Id.* at 47. Thereafter, the defendant filed a motion for summary judgment in state court on the ground that the state *blacklisting* claim was precluded by the final judgment in the federal *defamation* claim. *Id.* at 47. The trial court agreed and subsequently entered a judgment in favor of the defendant. *Id.* at 50. On appeal, we reversed, holding (among other things) that the blacklisting claim was *not* precluded. *Id.* at 55. We explained:

"[W]e conclude that plaintiff's blacklisting claim did not arise out of the same transaction as did his defamation claim in federal court. In general terms, the factual

transaction at issue in the federal action involved the circumstances surrounding plaintiff's termination. In that context, the defamation claim concerned a single false statement—*viz.*, that plaintiff had cheated on his LEDS exam and encouraged another employee to do so as well—made by one of defendant's employees to create, as plaintiff theorized, a pretextual justification for plaintiff's subsequent termination. Further, although plaintiff alleged that defendant defamed him to interfere with his ability to obtain employment, plaintiff sought damages only for emotional distress and the harm caused to his reputation.

"As did plaintiff's defamation claim, the subject matter of plaintiff's blacklisting claim concerns communications about plaintiff's dishonesty and unfitness. Nevertheless, plaintiff's blacklisting claim concerns a different factual transaction. That is so for at least two reasons.

"First, plaintiff's blacklisting claim involved communications that occurred over a substantial period of time after his termination that are distinct from the single communication that was the subject of his defamation claim and that the federal court concluded was privileged. Thus, the facts concerning the circumstances surrounding those later communications, including when and between whom they were made, will be different from those adjudicated as part of plaintiff's defamation claim.

"Second, the gravamen of plaintiff's federal action was that his termination was wrongful. In that context, plaintiff's defamation claim—which was predicated on defendant's allegedly false statement that plaintiff had cheated on his LEDS examination—functioned as a vehicle for plaintiff to establish that defendant's purported reason for terminating him was pretextual. By contrast, his blacklisting claim alleges that defendant's subsequent communications were motivated by a different purpose—*viz.*, to 'disqualify plaintiff from certification as a police officer or corrections officer in the State of Oregon' and to 'prevent[] plaintiff from securing employment as a police officer or corrections officer in the State of Oregon.' The factual bases underlying those distinct motivations will themselves be distinct."

*Id.* at 54-55.

The two claims in the present case are far more distinct from each other than the defamation and blacklisting claims in *Lucas*. Although the public meetings claim in *Krisor I* and the retaliation claim in this case are related to each other in that they both stem from plaintiff's dissatisfaction with defendant's employment practices as applied to the maintenance technician job at the fair grounds, the two claims involve different factual transactions. The first involves the facts from July 2008 surrounding an allegedly unlawfully convened and conducted public meeting; the second involves the facts from March 2009 underlying an employment decision, that is, the decision not to interview plaintiff in retaliation for his earlier complaint. In the first action, plaintiff sought only injunctive relief, in particular, the voiding of the decision to hire Haffner; in the second, he seeks damages for the board's later allegedly retaliatory action. Insofar as plaintiff alleged a motive underlying the board's action in *Krisor I*, it was some members' desire to hire relatives and business associates; the alleged motive underlying the board's action in *Krisor II* is members' desire to inflict harm on plaintiff in retaliation for his prior complaint of illegal hiring in 2008.

We therefore echo our decision in *Lucas*. Under the circumstances described above, we conclude that plaintiff's retaliation claim was not part of the same factual transaction that was litigated in *Krisor I*. Accordingly, the trial court erred in allowing summary judgment as to plaintiff's retaliation claim.

Reversed and remanded.